*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0226P (6th Cir.)
File Name: 03a0226p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

NEW ENGLAND HEALTH CARE
EMPLOYEES PENSION FUND,
On Behalf of Itself and All
Others Similarly Situated,
        *Plaintiff-Appellant,*

    *v.*

ERNST & YOUNG, LLP,
        *Defendant-Appellee.*

No. 01-6523

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 00-00124—Joseph H. McKinley, Jr., District Judge.

Argued: May 1, 2003

Decided and Filed: July 9, 2003

Before: NELSON and COLE, Circuit Judges; ROSEN,
District Judge.*

_____

* The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

_____

### COUNSEL

**ARGUED:** Eric A. Isaacson, MILBERG, WEISS,
BERSHAD, HYNES & LERACH, San Diego, California, for
Appellant. Stanley J. Parzen, MAYER, BROWN, ROWE &
MAW, Chicago, Illinois, for Appellee. **ON BRIEF:** Eric A.
Isaacson, Joseph D. Daley, MILBERG, WEISS, BERSHAD,
HYNES & LERACH, San Diego, California, for Appellant.
Stanley J. Parzen, Jeffrey W. Sarles, MAYER, BROWN,
ROWE & MAW, Chicago, Illinois, Frank P. Doheny, Jr.,
DINSMORE & SHOHL, Louisville, Kentucky, Lora S.
Morris, MUSE & MORRIS, Louisville, Kentucky, for
Appellee.

_____

### OPINION

_____

DAVID A. NELSON, Circuit Judge. Private lawsuits
impliedly authorized under § 10(b) of the 1934 Securities
Exchange Act, the Supreme Court held in *Lampf, Pleva,
Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350
(1991), are subject to the statutory limitations provision
established in § 9(e) of the Act. Private securities fraud
actions must thus be "brought within one year after discovery
of the facts constituting the violation and within three years
after such violation." See 15 U.S.C. § 78i(e).

The present action, a § 10(b) securities fraud case brought
by an investor against an accounting firm, is barred by the
one-year statute of limitations if the word "discovery," as
used in the statute, extends to constructive discovery as well
as actual discovery. The plaintiff investor having been put on
"inquiry notice" of the alleged fraud more than one year

before the filing of the complaint, in other words, the question is whether such notice suffices to bar the action.

Like a number of our sister circuits, we believe that inquiry notice is sufficient to trigger the running of the one-year limitations period. The district court dismissed this case on grounds that involved the three-year statutory period, among other things, but we shall affirm the dismissal under the one-year provision without reaching the grounds found persuasive by the district court.

I

This case has its origins in financial difficulties experienced by clothing manufacturer Fruit of the Loom, Inc. ("Fruit") in the 1990s. According to the plaintiff, Fruit's stock "collapse[d]" in November of 1995 as a result of market changes and poor management. Fruit took steps to improve performance in 1996, but it became clear by the fourth quarter that Fruit would not meet its financial goals for the year. Therefore, the plaintiff has alleged, Fruit's management instituted a "pull-forward" program of early shipments, which was designed to accelerate recognition of 1997 revenues into the fourth quarter of 1996. Fruit ended up reporting financial results for 1996 that were much higher than expected, and Fruit's stock rebounded.

Fruit's 1996 financial statements were audited by Ernst & Young, LLP ("Ernst"), the defendant herein. According to the plaintiff, the statements violated generally accepted accounting principles ("GAAP") by failing to write down overvalued inventory and fixed assets and failing to accrue certain liabilities, as well as by improperly recognizing 1997 revenue in 1996. In a report dated February 12, 1997, however, Ernst certified that Fruit's 1996 financial statements "present fairly, in all material respects, the consolidated financial position of [Fruit] . . . and the consolidated results of [its] operations and [its] cash flows . . . in conformity with

generally accepted accounting principles." The report stated further that Ernst had conducted its audit of Fruit's statements "in accordance with generally accepted auditing standards" ("GAAS").

In March of 1997, Fruit filed its Form 10-K – which included the 1996 financial statements and Ernst's February 12 audit report – with the Securities and Exchange Commission ("SEC"). The next month, Fruit distributed the financial statements and Ernst's certification to its shareholders as part of an annual report. Also in April, Fruit reported its results for the first quarter of 1997 – results that were down from the first quarter of 1996 and that fueled a decline in the value of Fruit stock. Fruit reported its second-quarter results, which were again below 1996 levels, in July. The plaintiff contends that Fruit's first and second quarter financial statements, which were reviewed by Ernst, departed from GAAP.

On July 9, 1997, Fruit filed a registration statement with the SEC in connection with a public offering of securities. The registration statement included Fruit's financial statements for 1996 and the first two quarters of 1997, incorporated Ernst's February 12 audit report by reference, and included a letter in which Ernst consented to the use of its report. On August 6, 1997, Fruit filed an amendment to the July 9 registration statement. The amendment, like the original registration statement, incorporated Ernst's audit report and included Ernst's consent to the use of that report.

For the third and fourth quarters of 1997, Fruit reported large losses. In January of 1998, the value of Fruit's stock dropped to slightly more than half of what it had been in March of 1997.

On July 1, 1998, New England Health Care Employees Pension Fund ("New England"), undertaking to act on behalf of itself and other purchasers of Fruit stock, sued Fruit and

several of its directors and officers for securities fraud. New England alleged that the defendants intentionally overstated earnings on Fruit's financial statements for 1996 and the first two quarters of 1997, and that the defendants made additional public statements about Fruit's performance and prospects that were intentionally false (including representations that the financial statements adhered to GAAP). Ernst was not named as a defendant.

While that case was pending, Fruit entered bankruptcy. Then, on June 28, 2000 – nearly two years after the filing of the suit against Fruit – New England brought the present action against Ernst. New England's complaint, which substantially repeated the earlier allegations of fraud by Fruit and its directors and officers, alleged that Ernst participated in the fraud by certifying the 1996 financial statements as consistent with GAAP, stating that it audited the statements in accordance with GAAS, and consenting to the use of its audit report in Fruit's offering documents. According to New England, Ernst's statements and letters of consent were fraudulent because Ernst was aware of evidence contradicting Fruit's reported results for 1996 and the first two quarters of 1997.

Ernst moved for dismissal under Rule 12(b)(6), Fed. R. Civ. P., arguing that the action was time-barred and that New England had failed to allege particular facts supporting an inference of scienter, *i.e.*, an inference that Ernst either knew its statements to be false or was reckless in assessing their truth. The district court granted the motion. The court noted that Ernst's audit report of February 12, 1997, was made more than three years before the filing of suit, and it held that Ernst's consent letters of July 9 and August 6, 1997, did not re-start the three-year repose period prescribed by 15 U.S.C. § 78i(e). The court further held that New England had not pleaded "with particularity facts giving rise to a strong inference that [Ernst] acted with the required state of mind" in accordance with the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2). The district court rejected Ernst's argument that the action was barred by the one-year statute of limitations, see 15 U.S.C. § 78i(e), holding that it was not necessarily true that New England knew or should have known of Ernst's alleged fraud before June 28, 1999.

The dismissal being without prejudice, New England filed an amended complaint against Ernst in March of 2001. Ernst again moved to dismiss the complaint, and the district court again granted the motion. The court rejected New England's argument that Ernst's consent letters constituted new misrepresentations – made within the three-year period of repose – that were materially different from the misrepresentations allegedly contained in the February 12 audit report. The court also held that New England still had not pleaded sufficient facts showing scienter. The complaint was dismissed with prejudice, and this timely appeal followed.

II

We review the dismissal of New England's complaint *de novo*. See, *e.g.*, *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 547 (6th Cir. 1999). In doing so, we may affirm the judgment of the district court on any ground supported by the record. See *id.* at 547-48.

A

Securities fraud litigation under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, must be commenced, as we have seen, "within one year after the discovery of the facts constituting the violation . . . ." 15 U.S.C. § 78i(e); see *Lampf*, 501 U.S. at 364, where the Supreme Court borrowed the limitations provisions of § 9(e)

of the 1934 Act, 15 U.S.C. § 78i(e), for actions brought under § 10(b) and Rule 10b-5.

Reading the language of § 9(e), narrowly, New England argues that only actual discovery of fraud can start the one-year limitations period. Ernst counters that the period begins to run upon "inquiry notice" of fraud – meaning, under one interpretation, the point at which the plaintiff should have discovered the fraud through reasonably diligent inquiry.

New England is correct, of course, that § 9(e) refers only to "discovery" as the trigger of the limitations period. Unlike some other federal statutes of limitations – notably, § 13 of the Securities Act of 1933, which allows actions based on false offering documents to be brought "within one year after the discovery" of the false statement "*or after such discovery should have been made by the exercise of reasonable diligence*," 15 U.S.C. § 77m (emphasis added) – § 9(e) does not expressly provide for inquiry notice.

That does not necessarily mean, however, that § 9(e) requires actual discovery of fraud before the limitations period will begin to run. The term "discovery," when used in a statute of limitations, can be broader than "actual discovery." See, *e.g.*, *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1254 (1st Cir.) (holding that "discovery," as used in a statute of limitations within the Employee Retirement Income Security Act, "encompasses both actual and constructive discovery"), *cert. denied*, 519 U.S. 823 (1996). And there is good reason to interpret § 9(e)'s "discovery" as "includ[ing] constructive or inquiry notice, as well as actual notice." *Menowitz v. Brown*, 991 F.2d 36, 41 (2d Cir. 1993). If actual discovery were required, investors could extend the time for filing suit simply by refusing to investigate possible fraud. Thus, an actual discovery standard would encourage "the opportunistic use of federal securities laws to protect investors against market risk;" investors could wait to see whether a poorly performing

stock recovered, reap investment profits if it did, and sue for damages if it did not. *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 722 (7th Cir. 1993), *cert. denied*, 511 U.S. 1085 (1994).[1] "This tactic is discouraged by the doctrine of inquiry notice . . . ." *Id.*

The fact that Congress expressly provided for inquiry notice in § 13 of the 1933 Act, without doing so in § 9(e), does not persuade us that "discovery" must be read as "actual discovery." As the Seventh Circuit has pointed out, Congress could not have guessed in 1934 that § 9(e) would be applied to claims of fraud brought under § 10(b) – claims more closely resembling "false statement" claims under §§ 11 and 12 of the 1933 Act, 15 U.S.C. §§ 77k and 77l, than "market manipulation" claims under § 9 of the 1934 Act, *id.* § 78i. See *Tregenza*, 12 F.3d at 721-22. Section 9(e)'s failure to use "inquiry notice" language, therefore, cannot support an inference that Congress intended the narrowest possible discovery standard to apply in actions arising under § 10(b). See *id.* Congress never focused on the question, because Congress never chose any statute of limitations for § 10(b) actions – actions that are, after all, creatures of the courts and not of the legislature. See *Lampf*, 501 U.S. at 358-59.

The Supreme Court, on the other hand, did choose a statute of limitations for § 10(b) actions, and it explicitly chose § 9(e) over § 13 and other one-year/three-year limitations periods set out in the 1933 and 1934 Acts. See *id.* at 364 n.9. But while acknowledging that "slight[]" differences in terminology could someday "prove significant," *id.*, the Court characterized the various limitations provisions as essentially the same: "Although not identical in language, all these

---

[1] Investors' ability to hedge against risk in this manner would be circumscribed by the three-year period of repose contained in § 9(e), see 15 U.S.C. § 78i(e), but, in the words of the Seventh Circuit, "[t]hree years is an age in the stock market." *Tregenza*, 12 F.3d at 722.

relate to one year after discovery and to three years after violation." *Id.* at 355 n.2. Finding no indication that the Court believed § 9(e) to be meaningfully different from § 13 – or, more to the point, that the Court considered the absence of an express reference to inquiry notice in § 9(e) to be significant – we do not think the Court's choice of § 9(e) forecloses an interpretation of "discovery" that includes inquiry notice.[2]

We therefore join the courts of appeals of at least seven other circuits in holding that inquiry notice is sufficient to trigger the one-year limitations period for actions brought under § 10(b). See *LC Capital Partners v. Frontier Insurance Group*, 318 F.3d 148, 154 (2d Cir. 2003); *In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1324-25 (3d Cir. 2002); *Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002); *Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th Cir. 2001); *Sterlin v. Biomune Systems*, 154 F.3d 1191, 1196 (10th Cir. 1998); *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Howard v. Haddad*, 962 F.2d 328, 330 (4th Cir. 1992).[3] None of our

---

[2] In reaching this conclusion, we considered the SEC's brief as amicus curiae in *Lampf*, as well as the other materials that New England submitted for judicial notice. Ernst's motion to strike the request for judicial notice is denied.

[3] Ernst suggests that this circuit endorsed the inquiry notice standard for § 10(b) actions in *Ockerman v. May Zima & Co.*, 27 F.3d 1151, 1155 (6th Cir. 1994). The passage that Ernst quotes, however, merely characterizes the holding of *Lampf*:

> "In *Lampf*, the Supreme Court held that all actions under section 10(b) and Rule 10b-5 must be brought within one year from the time the fraud was discovered or should have been discovered, but no more than three years from the transaction giving rise to the claim." 27 F.3d at 1155.

This gloss on *Lampf* – *i.e.*, the insertion of the phrase "or should have been

sister circuits, so far as we know, has held that constructive discovery cannot suffice to start the one-year clock running.[4]

Before we turn to the application of § 9(e) to the facts of this case, we need to consider when the limitations period begins to run under an "inquiry notice" standard. Ernst suggests that the limitations period is triggered when the plaintiff learns facts that would cause a reasonable investor to investigate the possibility of fraud. Some cases support that suggestion. See, *e.g.*, *Theoharous*, 256 F.3d at 1228. The majority view, however, is that knowledge of suspicious facts – "storm warnings," they are frequently called – merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud. See, *e.g.*, *Young*, 305 F.3d at 9-10; *Rothman v. Gregor*, 220 F.3d 81, 97 (2d Cir. 2000); *Sterlin*, 154 F.3d at 1201-02 ; *Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367-68 (7th Cir. 1997). This view, we believe, reflects an appropriate balance between "the staunch federal interest in requiring plaintiffs to bring suit promptly . . . and the equally strong interest in not driving plaintiffs to bring suit . . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to

---

discovered" into *Lampf*'s literal holding – was not essential to our decision in *Ockerman*, as the sufficiency of inquiry notice was not at issue in that case. We thus agree with New England that *Ockerman* does not control the case at bar.

[4] The Ninth Circuit has indicated – in dictum – an inclination toward the actual discovery standard. See *Berry v. Valence Technology, Inc.*, 175 F.3d 699, 703-04 & n.6 (9th Cir.), *cert. denied*, 528 U.S. 1019 (1999). For the reasons given above, we are not persuaded by the Ninth Circuit's analysis.

The Third Circuit's position on this issue has not always been clear, but in 2002, answering what it termed "an open question in this court," that circuit applied the inquiry notice standard under § 9(e). See *NAHC*, 306 F.3d at 1325.

support their claims." *Young*, 305 F.3d at 9 (citing *Sterlin*, 154 F.3d at 1202). We conclude, in accordance with the majority view, that the § 9(e) limitations period begins to run when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud.

B

Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975), *quoted in Duncan v. Leeds*, 742 F.2d 989, 991 (6th Cir. 1984). A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice. See, *e.g.*, *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). New England's complaint against Fruit, therefore, is properly a part of the record before us.

Reading New England's amended complaint against Ernst in conjunction with New England's earlier complaint against Ernst's client, Fruit of the Loom, we believe that New England can prove no set of facts showing that it failed to discover Ernst's alleged fraud, either actually or constructively, before June 28, 1999. No later than July 1, 1998, when it filed the complaint against Fruit, New England was aware that Fruit's financial statements for 1996 (and the first two quarters of 1997) did not adhere to GAAP. New England also knew, or could have learned through minimal investigation of public records, that Ernst had audited Fruit's 1996 statements and declared them to be in conformity with GAAP. New England obviously knew enough by July 1,1998, to conclude that Ernst's certification was false.

New England argues that it could not have known whether Ernst's certification was *knowingly or recklessly* false until it obtained Ernst's workpapers through discovery in the Fruit litigation. We agree that scienter on the part of corporate insiders – which New England plainly alleged in the Fruit complaint – does not necessarily imply scienter on the part of outside auditors. At the same time, however, direct evidence of scienter is not necessary to a determination of fraud. See, *e.g.*, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) (noting that scienter may be proved with circumstantial evidence). In this case, we believe, the facts alleged in the Fruit complaint strongly suggest that Fruit's auditors were at least reckless.

For one thing, the alleged fraud relates primarily to departures from GAAP contained in audited financial statements – the "same issues," New England has said, that are addressed in the Ernst complaint – and not to representations that were neither scrutinized nor approved by the auditors. Moreover, the scope of the alleged fraud – involving overvaluation of fixed assets and inventory by more than $400 million, premature recognition of more than $50 million in sales, and failure to accrue liabilities and charges totaling $89 million – is such that any reasonable investor would question the auditors' oversight. As New England says in its brief, the fraud "does not involve little mistakes that the auditors might have easily overlooked." In the light of the particular allegations against Fruit, we are at a loss to understand why New England should not have determined, by July 1, 1998, that Ernst knowingly or recklessly participated in the alleged fraud.

At the very least, New England should have made that determination during the 12 months that elapsed between July 1, 1998, and June 28, 1999 – ample time, it seems to us, for a diligent investigation to establish Ernst's close involvement with Fruit's business. In sum, we are satisfied

that New England can prove no set of facts showing that it lacked inquiry notice before June 28, 1999.

### III

Having concluded that New England's complaint is untimely under the statute of limitations, we need not address the complaint's timeliness under the three-year statute of repose or the sufficiency of the allegations of scienter. Our conclusion also compels a determination that the district court did not err in dismissing the amended complaint with prejudice. Because of the time bar, further amendment of the complaint would be futile. See, *e.g.*, *Deutsch v. Turner Corp.*, 317 F.3d 1005, 1029 n.20 (9th Cir. 2003).

**AFFIRMED.**