DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Joyce Cain, Jimmy Vowell and Rex Bolack, appeal from the judgment of the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In April of 2000, Appellant, Joyce Cain ("Cain"), invested in gateway switches, a security product. Cain, a Texas resident, made this investment based on advice from her financial advisor, Mike Scott. Global Telelink Services ("GTS") made the gateway switches available for investment. The stated purpose for the switch was to facilitate long-distance telephone service. *Page 2 
As part of the investment scheme, Cain leased the switch back to GTS for 48 months. In exchange, Cain was to receive monthly rental payments and royalties.
 {¶ 3} The purchase of the gateway switches was made through Individual Retirement Accounts ("IRAs"). Because IRAs require a custodial financial institution, Cain, upon Scott's direction, selected Mid Ohio Securities, Corp., Appellee, as the institution where she would establish her self-directed IRAs and as the institution which would serve as custodian of her sale-leaseback investments with GTS. Appellee obtained confirmation from GTS that it was in compliance with applicable securities laws.[1]
 {¶ 4} Appellants Jimmy Vowell ("Vowell") and Rex Bolack ("Bolack") are also Texas residents and clients of Mike Scott. Scott had persuaded Vowell and Bolack to invest in GTS in the spring of 2000. Scott also recommended that Vowell and Bolack use Appellee as the custodian of the self-directed IRAs to purchase their investment in GTS.
 {¶ 5} Appellants all signed individual direction of investment forms instructing Appellee to make the purchase in GTS. Accordingly, Appellee made these purchases in March and April of 2000. Thereafter, Appellants received regular monthly payments from GTS. Appellants' regular monthly payments ceased in early March of 2001. In July of 2001, Appellants received notification *Page 3 
that a lawsuit had been filed against GTS and its president in the U.S. District Court for the Northern District of Georgia by the Securities and Exchange Commission ("SEC"), that a receiver had been appointed by the Court and that the receiver for GTS had filed a motion to "sell substantially all of the assets and stock of [GTS]." Despite GTS's assurance that it was in compliance with securities laws, the investment was not registered with the Ohio Division of Securities.
 {¶ 6} Cain filed the within matter against Appellee as a purported class action on January 26, 2005. In the suit, Cain sought to rescind her purchase of the switches pursuant to R.C. 1707.43, which prescribes remedies for purchasers in an unlawful sale, based on the fact that the switches were unregistered securities. On June 20, 2005, Vowell and Bolack moved to intervene in the suit. The trial court granted their motion on September 13, 2005. Appellee filed a motion for summary judgment on November 15, 2005. Appellee asserted that Appellants' claims were barred by the two-year statute of limitations contained in R.C.1707.43(B) and that Vowell and Bolack's claims were also barred by that provision's five-year statute of repose. On January 5, 2006, the trial court granted Appellee's motion as to Vowell and Bolack but denied the motion as to Cain. On January 25, 2006, the trial court denied Appellants' motion for reconsideration.
 {¶ 7} Appellee and Cain subsequently filed motions for summary judgment addressing the merits of Cain's claims. On April 27, 2006, the trial court granted Appellee's motion on Cain's claims under R.C.1707.43 and to Cain *Page 4 
on Appellee's counterclaim for indemnification. The trial court denied the remaining portions of Cain's summary judgment motion. Appellants timely appealed from the trial court's orders. We have combined Appellants' assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO [APPELLEE] ON THE CLAIM ASSERTED BY [APPELLANT CAIN]."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO [APPELLANT CAIN] ON THE CLAIM SHE ASSERTED AGAINST [APPELLEE]."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO [APPELLEE] ON THE CLAIMS ASSERTED BY [APPELLANTS VOWELL AND BOLACK]."
 {¶ 8} In their assignments of error, Appellants contend that the trial court erred in granting summary judgment to Appellee on their claims and in denying summary judgment to Cain on her claim against Appellee.
 {¶ 9} R.C. 1707.43 provides the statute of limitations for purchasers seeking to recover damages for securities sold in violation of the law. In the instant case, the events Appellants complain of occurred during 2000 and 2001. Therefore, this opinion refers to the prior version of R.C. 1707.43 which provided, in pertinent part: *Page 5 
 "No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period." (Emphasis added.)
R.C. 1707.43 was amended effective September 16, 2003 to designate divisions (A), (B) and (C) and to substitute "five" years for "four" years in the newly designated division (B).
 {¶ 10} The two-year provision is based on notice and is an actual statute of limitations while the four-year provision is a statute of repose. See Wyser-Pratte Mgt. Co., Inc. v. Telxon Corp. (C.A.6, 2005),413 F.3d 553, 561, fn. 7. Because R.C. 1707.43 provides that the limitations period is the shorter of the two, we need not address the statute of repose as the claims are barred by the two-year statute of limitations. See Id.
 {¶ 11} Pursuant to the statute of limitations under R.C. 1707.43, Appellants cannot bring their suit "more than two years after [they] knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful[.]" (Emphasis added.) The Sixth Circuit Court of Appeals in Wyser-Pratte held that constructive notice is sufficient to commence the two-year period under R.C. 1707.43.Wyser-Pratte, 413 F.3d at 561, fn. 7. Although Ohio courts have not definitively determined what constitutes "constructive notice" under this provision, the Sixth Circuit has interpreted this provision.Hardin v. Reliance *Page 6 Trust Co. (N.D.Ohio 2006), No. 1:04 CV 02079, at *5, citingWyser-Pratte, 413 F.3d at 561. The Wyser-Pratte court held that "because Ohio has adopted a limitations period specific to claims arising out of the sale of securities * * * the Ohio courts would apply a standard consistent with the `inquiry notice' standard applicable to similar federal securities fraud claims." Wyser-Pratte, 413 F.3d at 562. Under this standard, "`knowledge of suspicious facts — "storm warnings," they are frequently called — merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud.'" Id., quoting NewEngland Health Care Emps. Pension Fund v. Ernst Young, LLP (C.A.6, 2003), 336 F.3d 495, 501. The Sixth Circuit interpreted the notice requirement as necessitating more than simply notice of the "`possibility of fraud'" to commence the limitations period. Id.
 {¶ 12} The Sixth Circuit noted that Ohio appellate courts have repeatedly found that:
 "`No more than a reasonable opportunity to discover the [fraud] is required to start the period of limitations. Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire with due diligence.'" Id. at 562, fn. 8, quoting Craggett v. Adell Ins. Agency (1993), 92 Ohio App.3d 443, 454.
 {¶ 13} Appellants brought their claims in 2005. The record reflects that, by the end of 2001, all three Appellants "had reason to know" that they were victims of the alleged violations of securities laws or at the least, they had "knowledge of suspicious facts" which triggered their duty to investigate. R.C. 1707.43; Id. at *Page 7 
562, quoting New England Health Care Emps. Pension Fund,336 F.3d at 501. The record demonstrates that the following occurred by the end of 2001: (1) In February of 2001, Vowell and Bolack had each received an anonymous letter describing GTS' fraudulent activities and potential insolvency, (2) Appellants stopped receiving regular monthly payments from GTS by March of 2001, (3) Appellants received formal notice of a lawsuit in U.S. District Court in which the SEC was suing both GTS and its president and that the court had appointed a receiver who sought permission to sell all of GTS' assets and stock, (4) in September of 2001 Appellants received notice that the U.S. District Court had granted the receiver's request and that "substantially all" of GTS' assets and stock would be sold, (5) each Appellant had reviewed or received a letter from Mike Scott outlining the suit he had filed against GTS and inviting them to join if they would refrain from suing him and (6) each Appellant had received one or more letters from fellow GTS investors inviting them to join in other lawsuits.
 {¶ 14} Cain's testimony reflects that she "had reason to know" that she was a potential victim of the alleged violations of securities laws by at least July of 2001. R.C. 1707.43. Cain testified that in July of 2001 she received a letter from Appellee forwarding a document from the U.S. District Court for the Northern District of Georgia titled SEC versus GTS, Global Contact Corporation and Robert Smith, III, GTS' president. The name of the document was "Order and Notice of *Page 8 
Hearing on Receiver's] Motion to Sell Substantially All of the Assets and Stock of [Appellee][.]" Cain testified that when she received this document:
 "Q. [Y]ou knew that [GTS] was in deep trouble, correct?
 "A. Yes.
 "Q. And you knew your investment was in deep trouble, correct?
 "A. Yes.
 "Q. And you didn't speak to a lawyer, correct?
 "A. That's correct.
 "Q. So you got this and did nothing, that's your testimony?
 "A. That's correct."
 {¶ 15} Bolack and Vowell's testimony similarly reflects that they "had reason to know" or "`knowledge of suspicious facts which would trigger a duty to investigate.'" R.C. 1707.43; Wyser-Pratte, 413 F.3d at 562, quoting New England Health Care Emps. Pension Fund, 336 F.3d at 501. They also testified regarding their receipt of the letter from Appellee forwarding the court document. Bolack testified regarding his receipt of the letter dated July 27, 2001:
 "Q. Now, you've heard of the Securities and Exchange Commission, have you not?
 "A. Yes.
 "Q. You know that's an entity of the United States that's in charge of enforcing the Federal securities laws, right?
 "A. Yes. *Page 9 
 "Q. * * * [W]hen you got [the letter] you knew that [GTS] was in big trouble, right?
 "A. Um-hum.
 "* * *
 "Q. Okay. You knew at that point you had lost all of your money, didn't you?
 "A. Well, I kind of figured I did.
 "Q. What did you do when you got this letter and notice of the hearing?
 "A. I didn't do anything.
 "Q. Did you contact an attorney?
 "A. No."
Bolack also testified regarding his delay in bringing the suit:
 "I didn't really realize that I had an opportunity here until I got a letter from Miller who is an attorney in Houston and when I called him, because I thought I was all finished with it, but he told me that there was some dates there and some legalities that we need to check into, and so that's what brought this on."
Vowell's testimony echoes that of Bolack and Cain:
 "Q. Okay. Well, did you take this document [the notice from the Northern District of Georgia regarding the SEC's suit against GTS] to any lawyer who might be — and ask him to explain it to you?
 "A. No. * * *
 "* * *
 "Q. You knew that was not good news for the company in which you had invested, did you not?
 "A. That's correct. *Page 10 
 "Q. You knew that selling all of their assets and stock was not a good sign, right?
 "A. That's correct.
 "Q. And you knew that — you had been very concerned prior to this time, right?
 "A. Um-hum.
 "Q. Because you had gotten the anonymous letter, your checks had stopped coming, your updates had stopped coming, right?
 "A. That's correct."
 Vowell further testified that:
 "Q. So by September of 2001 you knew that your investment was completely gone, right?
 "A. I felt like it was.
 "Q. And you had given up any hope at that point of getting it back?
 "A. That's correct."
 {¶ 16} The U.S. District Court for the Northern District of Ohio recently decided a factually similar case, Hardin v. RelianceTrust, supra, wherein it held that events such as the ones involved herein provide ample notice that investors might be the victims of securities fraud. Hardin involved individuals who had invested in the sale and leaseback of telephones who lost their investment and sued the custodian of their self-directed IRAs. The Hardin court held that the investors' claims were barred by R.C. 1707.43(B)'s statute of limitations. The district court found that the investors had constructive notice because they had *Page 11 
received SEC Litigation Releases, resulting court opinions and invitations to join in a lawsuit against the promoters of the sale/leaseback scheme.
 {¶ 17} As in Hardin, Appellants had ample notice that they might be the victims of securities fraud which should have triggered their duty to investigate. With little effort, Appellants could have discovered, by at least the end of 2001, the failure to register the securities. Appellants urge us to find that the statute of limitations should be calculated from the date on which their attorney informed them of the failure to register the securities. Taken to its logical conclusion, such an argument would eviscerate the two-year statute of limitations outlined in R.C. 1707.43(B) as investors would have no obligation to investigate a potential breach until their attorney apprised them of the breach.
 {¶ 18} Appellants' urge that this matter is controlled by our decision in Crater v. Internatl. Resources, Inc. (1993), 92 Ohio App.3d 18. We find Crater distinguishable. In Crater, the purchaser of securities that were neither registered with the Ohio Division of Securities nor exempt from registration, sued the sellers of those securities, who were not licensed as dealers when they sold the securities. The sellers of the securities furnished a prospectus to the purchaser that fully disclosed the unregistered status of the securities but failed to disclose their status as unlicensed dealers. The sellers argued that the disclosure that was made in the prospectus started the statute of limitations running on the purchaser's claim against him for being an unlicensed dealer. This Court found that the purchaser's *Page 12 
claims were not barred by the two-year statute of limitations. We reasoned that although one legal deficiency was disclosed, the purchaser could not be expected to infer the other, undisclosed deficiency. Id. at 24.
 {¶ 19} With regard to Bolack and Vowell's claims, we find that the trial court correctly granted summary judgment to Appellee on the statute of limitations. With regard to Cain's claims, we find that the trial court reached the right result in granting summary judgment to Appellee on Cain's claims, but for different reasons. The record reflects that by late 2001, Appellants had constructive notice that the GTS securities were not registered. As such, their claims, filed four years later, were barred by R.C. 1707.43's two-year statute of limitations. However, the trial court denied Appellee's summary judgment motion on statute of limitations grounds with regard to Cain's claims. The court later granted Appellee's summary judgment motion on the merits. An appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial.Reynolds v. Budzik (1999), 134 Ohio App.3d 844, 846, at fn. 3, citingNewcomb v. Dredge (1957), 105 Ohio App. 417, 424; State v. Payton
(1997), 124 Ohio App.3d 552, 557. Accordingly, we agree with the result reached by the trial court in granting Appellee's motions for summary judgment on Appellants' claims. *Page 13 
 {¶ 20} We overrule Appellants' assignments of error.
 III. {¶ 21} Appellants' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
 CARLA MOORE FOR THE COURT *Page 14 
SLABY, P. J. DICKINSON, J. CONCUR
[1] Appellee's offices are located in Elyria, Ohio. Since part of the transaction occurred in Ohio, it fell within the purview of the Ohio Securities Act. *Page 1