RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

VENTURE GLOBAL ENGINEERING, LLC, a
Michigan limited liability company; THE
LARRY J. WINGET LIVING TRUST, a trust
organized under Michigan law,

　　　　　　　*Plaintiffs-Appellants*,

　　　*v.*

SATYAM COMPUTER SERVICES, LTD.,
nka Mahindra Satyam,

　　　　　　　*Defendant-Appellee.*

No. 12-2200

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-15142—Robert H. Cleland, District Judge.

Argued: July 31, 2013

Decided and Filed: September 13, 2013

Before: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** John E. Anding, DREW, COOPER & ANDING, P.C., Grand Rapids, Michigan, for Appellants. Jordan B. Leader, PROSKAUER ROSE LLP, New York, New York, for Appellee. **ON BRIEF:** John E. Anding, Thomas V. Hubbard, Theodore J. Westbrook, DREW, COOPER & ANDING, P.C., Grand Rapids, Michigan, for Appellants. Jordan B. Leader, Bradley I. Ruskin, PROSKAUER ROSE LLP, New York, New York, for Appellee.

———————————

## OPINION

———————————

　　GRIFFIN, Circuit Judge. Plaintiffs Venture Global Engineering, LLC (VGE)

and The Larry J. Winget Living Trust (the Trust) appeal the district court's dismissal of

1

their claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure and subsequent denial of their motion for leave to amend.  They allege that defendant Satyam Computer Services, Ltd. (Satyam) induced them to form a joint venture by misrepresenting its financial stability and general suitability as a business partner.  Plaintiffs assert civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, fraud in the inducement, common law fraud, and fraudulent concealment.

Satyam moved to dismiss the complaint on the basis of claim preclusion (res judicata).  It argued that plaintiffs should have brought their claims during an arbitration between Satyam and VGE in 2005.  The district court agreed, concluding that plaintiffs' attempt to avoid Satyam's res judicata defense with allegations that Satyam had concealed facts giving rise to plaintiffs' claims was unavailing.  Plaintiffs promptly sought leave to file an amended complaint that responded to the deficiencies the district court identified in their original complaint, but the district court denied leave.  We hold that because plaintiffs' complaint adequately alleges that Satyam wrongfully concealed the factual predicate to plaintiffs' claims, the defense of claim preclusion does not apply.  Thus, the district court erred in granting defendants' motion to dismiss.  We therefore reverse the judgment of the district court and remand for further proceedings.

I.

In 1998, Satyam approached Venture Industries Australia, a company owned by the Trust, about forming a joint venture aimed at providing engineering services to the automotive industry.  Satyam represented to Trust representatives that although it was primarily an IT-services provider and had little experience in automotive engineering, it was nevertheless an attractive business partner because of its strong brand and recognition as a leading global IT company with a broad base of automotive customers for whom it provided services.  Satyam represented to the Trust and others that it was a publicly traded company and was audited, liquid, and financially stable.

The Trust and Satyam eventually agreed to form a joint venture.  The Trust formed co-plaintiff VGE as a separate legal entity, and, in 2000, VGE and Satyam formed Satyam Venture Engineering Services, Ltd. (SVES) under the laws of India.  The

concept was to combine the technical expertise of the Trust's affiliated companies and close connections in the automotive industry with the inexpensive engineering labor available in India. Each company received half of SVES's stock. Satyam's public and private representations regarding its financial stability were "critical" to the Trust's decision to form VGE and partner with Satyam. In the seventeen months following formation, VGE contributed a total of $735,000 to the joint venture.

VGE and Satyam signed more than a dozen documents relating to the joint venture, including a Shareholders Agreement and a Non-Compete Agreement. Both of these documents provided that disputes between Satyam and VGE that "cannot be resolved via negotiations shall be submitted for final, binding arbitration to the London Court of Arbitration."

The relationship soured, and, in July 2005, Satyam initiated an arbitration against VGE. Satyam claimed that the bankruptcy of certain entities affiliated with VGE constituted an "Event of Default" under the Shareholders Agreement, thus permitting Satyam to purchase VGE's shares for their book value, which at the time was considerably less than their market value. VGE counterclaimed that Satyam had breached its obligations first, and that these breaches "trump[ed]" later ones by VGE. According to VGE, Satyam (1) breached the Non-Compete Agreement by contracting directly with TRW, a major supplier of automotive equipment, and then subcontracting the automotive engineering portion of that agreement (about 25% of the total work) to SVES and charging an administrative fee that it declined to share with SVES, and (2) refused to provide VGE, upon request, with a copy of Satyam's contract with TRW, in violation of its legal obligations.

The arbitrator rejected VGE's counterclaims. He found that Satyam never competed with SVES because it subcontracted to SVES all the automotive engineering work it received from TRW, and he also found that VGE acquiesced in, and benefitted from, the arrangement. The arbitrator further determined that Satyam had no duty to provide VGE with a copy of its agreement with TRW and that doing so would not have benefitted the joint venture in any event.

However, the arbitrator sustained Satyam's claim, finding that the parties had agreed that a bankruptcy of any company affiliated with VGE and controlled by Larry Winget or his trust would be an Event of Default under the Shareholders Agreement, thus entitling Satyam to purchase VGE's shares in the joint venture for their book value. The arbitrator also determined that Satyam could recoup royalties that VGE received from the joint venture after Satyam first gave notice of its right to buy the shares. VGE was ordered to, among other things, "deliver to Satyam share certificates in [a] form suitable for an immediate transfer to Satyam or its designee evidencing all of VGE's ownership interest . . . in SVES . . . [and] to do all that may otherwise be necessary to effect the transfer of such ownership to Satyam or its designee."

Following the arbitration, Satyam filed an action in the United States District Court for the Eastern District of Michigan seeking to enforce the award. VGE responded with a cross-petition seeking to deny the award's recognition and enforcement. The district court granted Satyam's petition, denied VGE's cross-petition, and ordered VGE to comply with the award. This court affirmed. *Venture Global Eng'g, LLC v. Satyam Computer Servs., Ltd.*, 233 F. App'x 517 (6th Cir. 2007).

In February 2007, Satyam returned to the district court, this time seeking an order holding VGE in contempt for not delivering its shares to Satyam, as required by the enforcement order. VGE responded that Indian law prohibited it from transferring the shares because Satyam had not secured government approval of the transfer. VGE also moved to vacate the district court's prior enforcement order, citing new evidence that Satyam falsely represented to the court that it had received approval for the share transfer. On the recommendation of a special master, the district court denied VGE's motion and held it in contempt. VGE appealed the denial and the contempt order, but this court affirmed in all respects. *Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 F. App'x 421 (6th Cir. 2009). Thereafter, VGE complied with the enforcement order.

In December 2010, plaintiffs filed the instant action, alleging that, starting before the joint venture, Satyam engaged in a massive fraud scheme. Plaintiffs claimed that

they first discovered the fraud in 2009, when Satyam's former Chairman, major shareholder, and Chief Operating Officer, Ramalinga Raju, confessed the fraud in a letter to investors. Afterwards, various news sources, including *The Economist*, *Reuters*, and *Forbes Magazine*, referred to Satyam's scheme as "India's Enron." According to the complaint, a small group of Satyam executives that included Raju began manipulating and falsifying the company's financial statements to reflect fictitious revenue and inflated bank account balances. These actions resulted in gross overstatements of Satyam's assets. By 2001, the company's financials overstated its assets by $25 million; in 2009, assets were overstated by $1.4 billion. To help insulate the fraud, these executives enlisted others to issue glowing, but false, audit reports in the name of "PWC," which we presume at the pleadings stage to stand for PricewaterhouseCoopers, the well known and highly regarded worldwide accountancy firm.

Plaintiffs further allege that, during the joint venture, they expressed concerns about Satyam's contributions to the joint venture, but Satyam responded by pointing to its successful business model and status as a global IT firm with many Fortune 500 companies as potential sources for future SVES clients. These representations were false because Satyam's business model involved creating false work orders and bank statements, inflating its revenue, and manipulating its financial statements; its customer base was largely the product of 7,500 or more fraudulent work orders; and the extent of its workforce was grossly inflated.

According to plaintiffs, in 2008, Satyam became desperate to fill the void with real assets. Chairman Raju and others presented the board with a proposal to acquire the real estate assets of two companies that Raju and his brother owned. The proposal received public attention, leading a former Satyam executive to blow the whistle on the fraud in an email to an independent director who was then chair of Satyam's audit committee. The email was circulated to the other directors, which eventually prompted Raju to issue his confession disclosing the fraud and stating the real value of the company. Raju wrote in his letter: "What started as a marginal gap between actual operating profit and the one reflected in the books of accounts continued to grow over

the years.  It has attained unmanageable proportions as the size of the company operations grew significantly. . . .  It was like riding a tiger, not knowing how to get off without being eaten." Raju confessed that, as of September 30, 2008, Satyam's balance sheet was overstated by more than $1 billion.  In January 2009, the Indian government exercised its authority to replace Satyam's board and take control of the company. Control later passed to Mahindra Satyam, where it resides today.

Plaintiffs contend that, but for Satyam's fraud:  (1) the Trust would not have created and capitalized VGE for the purpose of forming the joint venture with Satyam; (2) as of 2002, when Satyam became insolvent, the joint venture, had it been formed at all, would have been dissolved or reconstituted to remove Satyam as a partner; and (3) the arbitration would not have occurred or would have produced a different result.

Satyam moved to dismiss the complaint.  The district court granted the motion on the basis of claim preclusion.  It first determined that the Trust had standing only to assert a claim of fraud in the  inducement.  It then concluded that all claims brought in the present action were barred by claim preclusion because they should have been brought in the prior arbitration.  The court further determined that plaintiffs could not avail themselves of the exception to claim preclusion that exists for wrongful concealment because plaintiffs failed to plausibly allege their due diligence in attempting to discover the fraud.  The district court therefore granted Satyam's motion and dismissed the complaint.  Two weeks later, plaintiffs sought leave to amend their complaint to add allegations regarding their due diligence and to join a new equitable claim.  The district court denied the motion to amend.  Plaintiffs timely appealed the orders of the district court.

## II.

We begin with the district court's dismissal of plaintiffs' claims.  The district court concluded that the doctrine of claim preclusion—that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action," *Montana v. United States*, 440 U.S. 147, 153 (1979)—bars plaintiffs' claims brought in the present case.  The court also determined that plaintiffs' allegations that defendant

Satyam concealed its fraud were not sufficient to overcome Satyam's affirmative defense of claim preclusion.

On appeal, plaintiffs challenge the district court's ruling on several grounds.[1] Because we conclude that the wrongful concealment issue, alone, warrants reversal, it is unnecessary for us to address plaintiffs' additional arguments.

A.

Whether state or federal preclusion law applies depends upon the source of the prior judgment; where it issues from a federal court, federal law governs. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007). Here, the relevant judgment is the federal one enforcing the arbitration award. Accordingly, federal principles of preclusion govern.

We held in *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002), as a matter of federal common law, that a prior judgment that would otherwise preclude further claims in a later action will not do so "where a plaintiff's failure to raise or reserve its cause of action in an earlier case between the parties was caused by the defendant's wrongful concealment of facts giving rise to the claim." *Id.* at 770 (internal quotation marks omitted); *accord McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612 (10th Cir. 1983) (explaining that claim preclusion "does not shield a blameworthy defendant from the consequences of his own misconduct"); *see also* Restatement (Second) of Judgments § 26, cmt. j (1982) ("A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud.").

To our knowledge, we have only once discussed and applied the wrongful-concealment doctrine attendant to claim preclusion. In *Browning*, the plaintiffs alleged that the defendant law firm violated federal law in connection with the settlement of claims brought in an earlier action involving the plaintiffs' retirement plan. The

---

[1] Plaintiffs do not appeal the district court's ruling that the Trust has standing only to bring a claim against Satyam for fraud in the inducement.

defendant firm successfully argued at summary judgment that claim preclusion barred the plaintiffs' claims, and we affirmed. In considering the plaintiffs' argument that the firm could not interpose the defense on account of having concealed its unlawful conduct in the earlier proceeding, we found persuasive the Tenth Circuit's analysis in *McCarty*, 713 F.2d at 612–13, and the "useful framework" it established for considering claims of wrongful concealment, reading the decision to establish two prongs: "(1) wrongful concealment of material facts that (2) prevented plaintiffs from asserting their claims in the first action." *Browning*, 283 F.3d at 770. We then noted that "'wrongful concealment' can be determined by analogy to cases in this circuit dealing with 'fraudulent concealment,' the presence of which bars a defendant from asserting the statute of limitations as a defense." *Id.* After observing that "concealment by mere silence" or an "unwillingness to divulge wrongful activities," will not suffice, we proceeded to find an absence of proof that the law firm concealed any facts from the plaintiffs. *Id.* at 770–71.

*Browning* nowhere mentioned a "due diligence" requirement; it identified just two elements for wrongful concealment, and due diligence was not one of them. However, the decision did state that the cases dealing with fraudulent concealment offer a useful analogy. The district court below took that advice and applied with full force our cases implementing the fraudulent-concealment doctrine, which *do* require a showing of the "plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *see, e.g.*, *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 475 (6th Cir. 2013). It determined that the complaint lacked allegations of due diligence, specifically a "recitation of the investigatory steps [plaintiffs] took once they suspected Satyam was causing significant harm to the joint venture."

On appeal, plaintiffs suggest that the district court erred by grafting onto the test for wrongful concealment a requirement that a plaintiff demonstrate his due diligence. The suggestion is not wholly without merit, but we have no occasion to pass on it, for we hold that plaintiffs have pled all that our due-diligence caselaw requires.

B.

Plaintiffs sufficiently pleaded in their original complaint in the present case the existence of wrongful concealment.  Although the district court did not address the first two prongs of the doctrine—(1) Satyam's concealment of material facts that (2) prevented plaintiffs from asserting their claims in the arbitration—we will analyze them in order to avoid further litigation on the matter, at least at the pleadings stage.

With respect to concealment, plaintiffs allege that, before the joint venture, "Satyam began manipulating and falsifying its financial statements" in order to "reflect[] ficti[ti]ous revenue," "inflate[d] bank balances," and millions of dollars less in loans. Satyam allegedly concealed and furthered its fraud by creating thousands of false work orders and bank statements, as well as grossly inflating the number of its trained employees.  These actions made Satyam appear to be a "preeminent global IT firm" with a "large customer base" that included "numerous [F]ortune 500 companies," which would serve as a lifeline for new business for the joint venture.

Satyam contends that these actions are part of the fraud itself and so cannot serve as a basis for *concealment* of the fraud.  We disagree.  Although the allegations form the basis of the underlying fraud, they also demonstrate that the fraud was "self-concealing." Where the claims sound in fraud, as plaintiffs' do here, the wrongful concealment prong is satisfied by a showing that the fraud was self-concealing. *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1471–72 (6th Cir. 1988); *see also Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349 (1874).

Regardless, plaintiffs also have pleaded acts of concealment that are sufficiently distinct from the underlying fraud.  Specifically, they allege that those responsible for the fraud engaged the services of others to issue false audit reports for the company in the name of a well known and highly regarded worldwide accountancy firm, thus actively concealing from plaintiffs "the means of discovering [their] cause of action." *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982).  These factual allegations are sufficient to allege that Satyam wrongfully concealed its fraud.

As for the second prong—that Satyam's concealment prevented plaintiffs from asserting their claims in the arbitration—plaintiffs allege that they, along with the rest of the world, did not discover Satyam's fraud until Ramalinga Raju disclosed it publicly in January 2009, well after the London arbitration.  That is sufficient.

Plaintiffs also adequately allege the third (assumed) prong—that they exercised due diligence until discovering the facts that underlie their claim.  It was on this prong that the district court found the allegations wanting.  In *Dayco*, we summarized the law of due diligence, stating that "an injured party has a positive duty to use diligence in discovering his cause of action," that "[a]ny fact that should excite his suspicion is the same as actual knowledge of his entire claim," and that "the means of knowledge are the same thing in effect as knowledge itself."  523 F.2d at 394 (internal quotation marks omitted).  We explained that a plaintiff who delays in bringing his claim must plead an explanation for the delay that is consistent with due diligence.  *Id.*  Relying on this language, the district court concluded that plaintiffs' suspicion during the arbitration that Satyam had breached its agreements and was harming the joint venture created a duty to investigate the possibility of the underlying fraud.  And because the complaint, in the district court's words, lacked "any recitation of the investigatory steps [plaintiffs] took once they suspected Satyam was causing significant harm to the joint venture," plaintiffs had failed to plead their diligence leading to discovery of the fraud.  We reject this analysis.

The district court did not have the benefit of our recent decision in *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459 (6th Cir. 2013).  There, we further elaborated on the due diligence requirement in the context of the fraudulent-concealment doctrine.  We explained that "only 'information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.'"  *Id.* at 475–76 (quoting *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985) (brackets omitted)).  That statement is fully consistent with the well-settled notion that a plaintiff's behavior need only be reasonable under the circumstances, and that reasonableness turns in part on how well the defendant

has hidden its wrongdoing. So, for example, "active concealment," whereby "the defendant has engaged in affirmative acts of concealment beyond the original fraud itself," we have said, "will be considered in determining the reasonableness of the behavior of the plaintiff under the circumstances." *Campbell*, 676 F.2d at 1127–28. In other words, "[a]ctions such as would deceive a reasonably diligent plaintiff will toll the statute," but "plaintiffs who delay unreasonably in investigating circumstances *that should put them on notice* will be foreclosed from filing, once the statute has run." *Id.* at 1128 (emphasis added). The upshot is that doing nothing might be reasonable where nothing suggests to a reasonable person that wrongdoing is afoot. However, once wrongdoing is suspected, the plaintiff must be diligent, even if doing so might in hindsight be considered futile. *See, e.g.*, *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 913 (6th Cir. 2010).

*Lutz* illustrates these principles. The case involved claims that the defendant oil companies breached a royalty contract and committed fraud by paying the plaintiffs less in royalties for oil extracted from the plaintiffs' land than the parties had agreed upon. The defendants argued that the claims were time-barred. We found the plaintiffs' allegations of fraudulent concealment sufficient to defeat the limitations defense at the pleadings stage. *See* 717 F.3d at 476. The determinative issue was whether the complaint included sufficient allegations of the plaintiffs' due diligence. We held that it did, citing allegations that the plaintiffs relied on—and therefore presumably read—the reports and documents that the defendants provided with each monthly royalty payment, which omitted true information and contained intentional misrepresentations; that there was "no practical way to independently determine the amount of royalty payments due"; and that "a reasonably prudent person would have had no way of knowing about the fraud due to the inaccuracies of the reports." *Id.* at 475–76. Critical to the outcome was this last allegation, factually supported by the first two. If it later proved true, we said, plaintiffs could avoid the time bar, even though all they had done was review the monthly statements; if it was not true—if in fact plaintiffs *did* have sufficient information to trigger their duty to investigate—then the claims could be time-barred. We reversed the dismissal and remanded for further proceedings, explaining that

whether there was fraudulent concealment was to be resolved later in the proceedings, after a factual record had been developed. *Id.*

This case is similar to *Lutz*. The following allegations plausibly suggest that a reasonable person in plaintiffs' position would not have suspected Satyam's systemic fraud: (1) Satyam held itself out to the public as an audited, liquid, and financially stable publicly traded company; (2) high-level Satyam executives enlisted individuals to issue false audit reports in the name of PWC, thus lending credibility to Satyam's financial reports and concealing the company's true value; (3) in response to concerns that plaintiffs expressed regarding Satyam's contributions to the joint venture, Satyam responded with false statements concerning its business model, failing to mention that its model was in fact based upon fictitious work orders, false bank statements, and a grossly inflated number of employees; (4) it was not until Satyam executive Joseph Abraham blew the whistle on Satyam's fraud internally (in an email to an independent director who was then chairing Satyam's audit committee) that the company's Chief Operating Officer publicly disclosed that the company's financial statements overestimated assets by over $1 billion; and (5) only because of that confession did Indian authorities discover the fraud, prompting them to replace Satyam's board and take control. These allegations establish what is critical in our view: the fraud was so well concealed that, other than those directly responsible, *no one*, including the chair of the company's own audit committee, knew anything about the fraud until it was revealed in 2009 from within. Accordingly, plaintiffs, who were reasonable in not suspecting Satyam's fraud before Raju's confession, had no duty to inquire into the fraud before discovering it in 2009. *Cf. Campbell*, 676 F.2d at 1128 (explaining that the reasonableness of a plaintiff's investigation of wrongdoing depends on the circumstances of the concealment).

We reject the district court's conclusion that plaintiffs' awareness of Satyam's contract with TRW and failure to turn over to the joint venture the administrative fees collected for work that the joint venture performed for TRW would have suggested to a reasonable person the possibility that Satyam had been engaging in the fraud alleged

in this case. The two forms of wrongdoing are unrelated, and Satyam has not cited any information unearthed before or during the arbitration that persuades us otherwise. *Cf. Ruth*, 604 F.3d at 914 (plaintiff's awareness of a potential defense that the defendant partnership could not sue her because it had not registered with the forum's secretary of state prompted suspicion of, and thus triggered a duty to further investigate, a closely-related claim that the defendant violated federal law by representing that it could sue, despite not registering with a county recorder). Plaintiffs had much at stake in the arbitration, and we suspect they would have "moved heaven and earth" to discover the fraud had they suspected its existence. It was simply too hidden for plaintiffs to have done so.

In sum, plaintiffs allege that they relied on the false statements Satyam made about its financial stability in deciding to form the joint venture and had no reason to suspect otherwise until Raju confessed. Accordingly, plaintiffs' behavior—of reviewing the publicly available documents regarding Satyam and relying on representations the company made concerning its business model and brand—"was reasonable under the circumstances." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 447 (6th Cir. 2012). Plaintiffs' allegations of wrongful concealment are sufficient to defeat Satyam's motion to dismiss on the basis of its affirmative defense of claim preclusion. Whether plaintiffs can ultimately prove their allegations should be determined on a motion under Rule 56 or at trial, once the facts are developed.

III.

Next, plaintiffs contend that the district court abused its discretion when it denied their motion for leave to file an amended complaint. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010); Fed. R. Civ. P. 15(a)(2). Plaintiffs' motion seeking leave, filed shortly after the district court granted Satyam's motion to dismiss, stated that the amendment was intended in part to "cur[e] what this Court identified as the deficiencies in Plaintiffs' initial Complaint warranting its dismissal under Rule 12(b)(6)," specifically the allegations concerning due diligence.

The motion also stated that leave was sought in order to add a claim in equity to set aside the earlier judgment enforcing the arbitration award.

By finding the allegations in the original complaint sufficient to plead a claim of wrongful concealment, we have rendered moot that portion of plaintiffs' motion to amend seeking to supply allegations that address the "deficiencies" the district court identified. Plaintiffs' only purpose in adding these allegations was to survive the pleadings stage, and we have concluded that the original allegations are sufficient. Thus, a ruling that the district court abused its discretion by denying leave to add the allegations would not alter plaintiffs' legal interests. *See Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (test for mootness). However, finding that the original allegations are legally adequate does not moot plaintiffs' request to add a claim for equitable relief. Thus, we address that aspect of the denial of plaintiffs' motion for leave to amend.

The only reason the district court gave for denying leave to add the equitable claim is that a final judgment was in place and plaintiffs never moved the court to reconsider its ruling or to alter, set aside, or vacate the judgment. But because we are reversing the dismissal and remanding the action for further proceedings, we have vacated the judgment. That removes the only barrier to adding the claim that the district court identified. It is therefore appropriate for the district court on remand to reconsider plaintiffs' request for leave to add their claim for equitable relief. *See, e.g.*, *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1076 n.3 (8th Cir. 2004); *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981); *cf. Henry v. Indep. Am. Sav. Ass'n*, 857 F.2d 995, 998 (5th Cir. 1988) (leaving to the district court on remand the task of reconsidering the plaintiff's leave request after rejecting the district court's only basis for denying it). We offer no opinion whether leave should be granted, but remand for reconsideration of the issue.

IV.

For these reasons, we reverse the judgment of the district court and remand for further proceedings.