NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0797n.06

Case No. 15-5132

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| LAUREN LLOYD, | ) | **FILED** |
|  | ) | Dec 07, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE EASTERN DISTRICT OF |
| MIDLAND FUNDING, LLC, MIDLAND | ) | TENNESSEE |
| CREDIT MANAGEMENT, INC., and | ) |  |
| ENCORE CAPITAL GROUP, INC., | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |

BEFORE: BOGGS, SUTTON, and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. Lauren Lloyd and her creditor settled a debt. Yet no one dismissed the then-pending collection action, prompting the state court to enter a default judgment against her. At first, no one noticed. But then the default judgment showed up on Lloyd's credit report. In response, Lloyd sued her creditor, alleging that the judgment had hurt her credit score which in turn had raised the interest rate she paid on a loan. The district court granted the creditor summary judgment on all of Lloyd's federal and state-law claims. We affirm in part and reverse in part.

In 2010, Lauren Lloyd owed $7,288.72 on her credit card, which Midland Credit Management serviced. After the loan went into default, Midland filed an action in state court, which set a court date for October 6, 2010. Shortly before that date, Midland and Lloyd settled

the debt for $4,000. Midland's counsel sent a letter to Lloyd on October 5, confirming the settlement and stating that it would "cease all legal actions" against her because payment had been "received . . . in full." R. 31-1 at 15.

In one sense, Midland lived up to this obligation. It did not take any additional legal action against Lloyd. In another sense, Midland failed to follow through on its promise, Lloyd claims, because it never affirmatively dismissed the state court action. In the apparent absence of any further filings from Lloyd or Midland, the state court entered a default judgment against her on October 6, 2010. So far as the record shows, Midland was just as unaware of this development as Lloyd. Even after the court entered judgment, Midland's records listed the account as settled and, when asked by a credit agency, Midland reported the account as paid.

Lloyd learned about the default judgment when she applied for a loan and noticed the judgment on her credit report. She contacted Midland about the problem in July 2012, and Midland moved to set aside the judgment on August 1. The court removed the judgment on October 5. Lloyd notified the pertinent credit agencies (Experian, Equifax, and TransUnion), which removed the judgment from all of her credit reports within six months of the court's corrective action.

Frustrated by what had happened, Lloyd filed this lawsuit in state court against Midland (and two affiliates, Midland Funding and Encore Capital Group). She sought relief under the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and an assortment of state laws. Midland removed the case to federal court based on federal question jurisdiction. *See* 28 U.S.C. § 1441(a). Lloyd's complaint featured two contentions. She complained that a default judgment was entered against her even though she had a valid settlement agreement with Midland. And she complained that Midland reported the judgment to credit agencies. Midland

conceded the first point but denied the second. As for damages, Lloyd claimed that her credit took a negative hit from the default judgment and that she had to pay a higher interest rate on a loan and extra fees as a result. Following discovery, the district court granted Midland summary judgment on all of Lloyd's claims. *Lloyd v. Midland Funding, LLC*, No. 3:12-CV-566-TAV-HBG, 2014 WL 3507363, at *14 (E.D. Tenn. July 14, 2014); *Lloyd v. Midland Funding, LLC*, No. 3:12-CV-566-TAV-HBG, 2015 WL 106264, at *4 (E.D. Tenn. Jan. 7, 2015). Lloyd appealed.

We give fresh review to a district court's grant of summary judgment, asking whether Midland is entitled to judgment as a matter of law because there is "no genuine dispute as to any material fact"—even after giving Lloyd the benefit of reasonable inferences from the record. Fed. R. Civ. P. 56(a); *see Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).

*Summary judgment record.* We must first determine what is (and is not) part of the summary judgment record. Lloyd claims that the district court erred when deciding what affidavits to include in that record. A few principles guide us. Civil Rule 56(c)(4) requires affidavits filed to support or oppose a motion to "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Documents that fail to do so may be disregarded on summary judgment. *See id.* 56(e). And any such affidavits "must be made on personal knowledge." *Id.* 56(c)(4).

Lloyd argues that the district court improperly refused to consider a declaration she submitted in opposition to Midland's motion for summary judgment. The declaration includes a printed copy of her online credit report from 2012, which lists the default judgment. The district court refused to consider the document (and Lloyd's discussion of it in her affidavit) on the ground that Lloyd failed to "lay any foundation for the admissibility" of the credit report. 2014

3

WL 3507363, at *6. Because Lloyd never explained the credit report in her declaration and failed to clearly identify the report in her deposition testimony, we agree that Lloyd did not satisfy her burden.

Lloyd also argues that the district court improperly relied on three affidavits from Midland's authorized representative, John Moreno, in ruling on the summary judgment motion. Midland designated Moreno to testify on its behalf under Civil Rule 30(b)(6). In Lloyd's view, Moreno's affidavits amounted to inadmissible hearsay and were not based on personal knowledge. We disagree.

In the first place, there is no hearsay problem. Although Moreno's affidavits by themselves might not be admissible at trial, he based those affidavits on "records kept in the regular course of [Midland's] business." R. 8-2 at 2. Those records would be admissible under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Because evidence at the summary judgment stage does not have to be in "a form that would be admissible at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014), the district court permissibly considered the affidavits.

In the second place, Moreno had the requisite personal knowledge required by Civil Rule 56(c)(4). The personal knowledge requirement works differently in this setting, where a human being (Moreno) speaks for a corporation (Midland). *See* Fed. R. Civ. P. 30(b)(6). It is not easy to take a deposition of a corporation or for that matter obtain an affidavit from one. In one sense, indeed, it is not even possible to do so, as inanimate objects are not known for their facility with language. That means, whenever a corporation is involved in litigation, "the information sought must be obtained from natural persons who can speak for the corporation." 8A Charles Alan Wright et al., Federal Practice and Procedure § 2103 (3d ed. 2015). And that means "[t]here is

no obligation to select a person with personal knowledge of the events in question," so long as the corporation "proffer[s] a person who can answer regarding information known or reasonably available *to the organization*." *Id.* (emphasis added) (quotation omitted); *see Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (explaining that a Rule 30(b)(6) witness "does not give his personal opinions, but presents the corporation's 'position' on the topic"); *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004) (holding that a Rule 30(b)(6) witness "was free to testify to matters outside his personal knowledge as long as they were within the corporate rubric"). In this instance, Moreno presented facts known to Midland based on his review of the company's records. That does not run afoul of the personal knowledge requirement in Civil Rule 56(c)(4). No error occurred.

*Fair Credit Reporting Act.* In challenging the district court's rejection of this claim, Lloyd argues that Midland failed to comply with its duty to investigate, invoking a section of the Act that imposes a "[d]ut[y on] furnishers of information upon notice of [a] dispute" to "conduct an investigation." 15 U.S.C. § 1681s-2(b). The problem is, this duty applies only to information *furnishers*, and Midland is not a furnisher of relevant information. It thus never had any such duty. The same goes for its affiliates.

Consistent with this assessment and with the uncontested record, Midland never reported a judgment against Lloyd to a credit agency. As a matter of practice, Midland does not report information on judgments to credit agencies. Even when Midland responded to an inquiry from a credit agency about the status of Lloyd's account a few months after the judgment was entered, Midland said that Lloyd's account "was satisfied and paid in full." R. 8-2 at 2.

That leaves Lloyd to object that Midland indeed reported the judgment to a credit agency. In the course of discovery, however, she never identified any evidence to support the point and

ultimately had to acknowledge that she does not know who reported the judgment. A "bare allegation[]" in a complaint will not suffice to rebut a motion to dismiss under Rule 12(b)(6)—and it makes even less headway against a motion for summary judgment under Rule 56. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

*Fair Debt Collection Practices Act.* In challenging the district court's disposition of her claims under this Act, Lloyd argues that Midland is a debt collector covered by the Act and that it made "false, deceptive, or misleading representation[s]" to her and used "unfair or unconscionable means to collect or attempt to collect a[] debt." 15 U.S.C. §§ 1692e, 1692f. These claims also face a problem but one of a different sort. Claims under the Act must be brought "within one year from the date on which the violation occurs." *Id.* § 1692k(d). Lloyd claims that Midland violated the Act when the court entered the default judgment. Yet the default judgment was entered on October 6, 2010, and Lloyd did not file this lawsuit until September 27, 2012. That was almost two years after the default judgment was entered and nearly one year late.

Lloyd responds that the discovery rule should preserve her claim—that the one-year statute of limitations did not begin to run until she knew or had reason to know of the violation. She adds that she did not learn about the default judgment until February 2012, and that she filed the lawsuit within a year of discovering her claim. This argument faces two hurdles: It assumes that the Act's statute of limitations includes a discovery rule and that she would satisfy it if it did. We have never decided whether this statute of limitations includes a discovery rule, and we need not resolve the point today.

Even if the Fair Debt Collection Practices Act contains a discovery rule, Lloyd had "reason to know" that a default judgment had been entered against her more than a year before

she filed this complaint. *See Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). The discovery rule requires "reasonable diligence" by the individual, *id.*, and Lloyd did not exercise it here. Midland served her with the complaint to recover on the credit card debt. She knew that the lawsuit was still pending and that a court date had been set when she spoke to Midland about settling the suit. And she had reason to know whether Midland ever moved to dismiss the action because she had been served with pleadings before and because Tennessee law usually requires a moving party to serve a notice of "every written motion" on the other party. Tenn. R. Civ. P. 5.01. She never received any such service. And she of course never checked the court's public docket to see if the action had been dismissed. Although "[w]e might toll a statute of limitations if a plaintiff diligently searches publicly available information but fails to discover a hidden defect," we will not do so when a plaintiff fails to discover the claim because of such a "lack of diligence." *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 913 (6th Cir. 2010). We thus agree with the district court that, even if the discovery rule applied, Lloyd did not exercise the requisite reasonable diligence to benefit from it.

Lloyd protests on the ground that Midland committed to "cease all legal actions" against her following the settlement. R. 31-1 at 15. But if Lloyd took that to mean Midland assumed responsibility to dismiss the action, she should have expected to see a served dismissal motion. When that did not happen, she was free to check with the court (or to look at the docket) to see if the action had been dismissed. When Lloyd failed to receive any notice from Midland or the court about her case—with the relevant rules making clear that she would get *something* if Midland followed through—"reasonable diligence" required her to investigate. That would have revealed the default judgment, allowing her to correct the error or file a lawsuit within the limitations period.

*State-law claims.* Lloyd filed three pertinent state-law claims—abuse of process, fraud, and breach of contract—and the district court rightly granted summary judgment to Midland on two of them. The district court properly held that Lloyd's state-law claim for abuse of process is time barred under Tennessee's applicable one-year statute of limitations. *See* 2014 WL 3507363, at *12; *see Blalock v. Preston Law Grp., P.C.*, No. M2011-00351-COA-R3-CV, 2012 WL 4503187, at *7 (Tenn. Ct. App. Sept. 28, 2012) (holding that, under Tenn. Code Ann. § 28-3-104, a one-year statute of limitations applies to abuse-of-process claims). Lloyd again urges us to apply the discovery rule. But because Tennessee's requirements mirror the federal ones, Lloyd does no better in this setting. *See Warwick v. Warwick*, No. E2011-01969-COA-R3-CV, 2012 WL 5960850, at *16–17 (Tenn. Ct. App. Nov. 29, 2012). "[T]he discovery rule," the Tennessee Supreme Court has explained, "tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). As we have just explained, Lloyd failed to exercise reasonable care and diligence when she failed to ensure that the state court had dismissed the collection case against her. So it is here.

Lloyd's fraud and breach-of-contract claims—and the district court's analysis of them—are more complicated. As the district court correctly noted, both of these claims stem from Lloyd's allegation that Midland violated the settlement agreement by obtaining a default judgment against her. 2014 WL 3507363, at *11. The district court also correctly recognized that, in order to succeed, Lloyd would have to prove that Midland's fraud or breach of contract caused damages. *Id.* But then the district court misstepped. It held that, because the alleged damages "are directly related to [Midland's] alleged reporting of [Lloyd's] default judgment," the Fair Credit Reporting Act preempted both claims. *Id.*

Giving Lloyd the benefit of all reasonable inferences, we do not think that her purported damages were "directly related" to Midland's alleged judgment reporting. Lloyd's breach-of-contract claim relied on the fact that Midland obtained the default judgment, not that it reported the judgment to others. Lloyd's fraud theory also primarily relied on the fact that Midland obtained the default judgment.

Lloyd could establish either fraud or breach of contract without proving that Midland reported the judgment. Assume for a moment that someone other than Midland reported the judgment to the credit agencies (as apparently was the case here), that the judgment ended up on Lloyd's credit report, and that, because the judgment was on her credit report, Lloyd suffered quantifiable damages. Midland's alleged fraud or breach of contract would be a cause of Lloyd's damages, and Midland could still be held liable. It is not the case that *any* damages would be related *only* "to the duties and responsibilities of furnishers of information to a consumer reporting agency." *See* 2014 WL 3507363, at *11. Because the two claims do not rely on the proposition that Midland was a furnisher of information related to the judgment, they are not preempted by the Fair Credit Reporting Act's preemption provisions. *See* 15 U.S.C. § 1681t(b)(1)(F) (preempting state-law claims "relating to the responsibilities of persons who *furnish information* to consumer reporting agencies" (emphasis added)). And because the claims are not covered by the other preemption provisions, they are not preempted on other grounds either. *See id.* § 1681h(e) (also preempting state-law claims for "defamation, invasion of privacy, [and] negligence").

Because these claims are not preempted, we must consider them on the merits. The fraud claim fails anyway because Lloyd did not show that Midland acted fraudulently. The theory of this claim is that Midland committed fraud when it purported to settle with her and then allowed

a default judgment to be entered against her. A claim for fraud under Tennessee law must establish (among other things) that the defendant's "representation of a present or past fact . . . was false when it was made" and that "the defendant either knew that the representation was false or did not believe it to be true or . . . made the representation recklessly without knowing whether it was true or false." *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012); *see Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014). Nothing in the record shows that Midland knowingly made a false statement when it said that it would "cease all legal actions" against Lloyd. R. 31-1 at 15. The record at most shows an accident or negligence. After the settlement, Midland treated the account as paid in full until Lloyd brought the mistake to its attention. At that point, Midland corrected the mistake. No fraud occurred on this record.

The breach-of-contract claim is a different story. To establish a breach of contract under Tennessee law, as elsewhere, Lloyd must show a contract, breach, and damages caused by the breach. *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC*, 79 F.3d 496, 514 (6th Cir. 1996). A reasonable jury could find all three elements. It could find that Midland entered a contract with Lloyd (by agreeing with her to settle the lawsuit). It could find that Midland breached the contract (by failing to cease all legal action against Lloyd when it did not dismiss the action). And it could find that Midland caused at least two types of damages (by requiring Lloyd to pay $239.40 for a credit monitoring service because of the judgment and to spend $12.00 for certified mail to communicate with Midland about the judgment). *See* 2014 WL 3507363, at *13. As to damages, by the way, that is not all. On remand, Lloyd should be given the opportunity to produce other cognizable (and admissible) evidence of damages caused by the breach: that she had to pay a higher interest rate on a loan and was denied a loan because of the judgment's impact on her credit score.

For these reasons, we reverse the district court's grant of summary judgment to Midland on Lloyd's breach-of-contract claim and affirm on all other counts.