*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PAMELA RUTH,

                    *Plaintiff-Appellant,*

       *v.*

UNIFUND CCR PARTNERS; DAVID
ROSENBERG; ZB LIMITED PARTNERS; CREDIT
CARD RECEIVABLES FUND, INC.; NATIONAL
CHECK BUREAU, INC. and JOHN DOE Nos. 1,
2 and 3, General Partners of ZB Limited
Partners,

               *Defendants-Appellees.*

No. 09-3426

> Appeal from the United States District Court
> for the Northern District of Ohio at Akron.
> No. 08-02689—Sara E. Lioi, District Judge.

Argued:  March 12, 2010

Decided and Filed:  May 11, 2010

Before:  KENNEDY, MOORE and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Anand N. Misra, THE MISRA LAW FIRM, LLC, Beachwood, Ohio, for
Appellant.  Alan H. Abes, DINSMORE & SHOHL LLP, Cincinnati, Ohio, for Appellees.
**ON BRIEF:**  Anand N. Misra, THE MISRA LAW FIRM, LLC, Beachwood, Ohio, Robert
S. Belovich, LAW OFFICE, Parma, Ohio, for Appellant.  Alan H. Abes, DINSMORE &
SHOHL LLP, Cincinnati, Ohio, for Appellees.

     SUTTON, J., delivered the opinion of the court, in which KENNEDY, J., joined.
MOORE, J. (pp. 10-11), delivered a separate opinion concurring in the judgment.

1

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.  Pamela Ruth contends that the district court should not have dismissed her lawsuit against Unifund, its general partners and National Check Bureau on statute-of-limitations grounds.  Because Ruth failed to comply with the one-year statute of limitations and because Unifund did not fraudulently conceal any information that prevented Ruth from filing her claim, we affirm.

I.

Unifund is a general partnership specializing in debt collection.  It conducts most of its business through its Cincinnati, Ohio office, and has done so since 2003.  In 2005, Unifund purchased the right to collect a credit card debt that Ruth allegedly owed to Citibank.

In July 2007, Unifund sued Ruth in an Ohio court to collect the debt.  Ruth received her summons on August 29.  In November, after retaining counsel, she raised Unifund's lack of capacity to sue as an affirmative defense.  *See* O.R.C. §§ 1329.10(B), 1777.04.  At the same time, she filed a counterclaim, alleging Unifund violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., by misrepresenting Ruth's debt to Citibank.  A month later, on December 12, apparently as a result of Ruth's affirmative defense, Unifund registered its name with the Hamilton County Recorder.

In late 2007 or early 2008, in connection with her defenses to Unifund's action and with her counterclaim, Ruth served Unifund with several interrogatories and document requests.  Unifund apparently ignored the requests until June 2008, when the state court threatened to impose sanctions.  On August 12, 2008, after receiving Unifund's discovery responses, Ruth moved to add an additional counterclaim, alleging Unifund violated the FDCPA by misrepresenting its capacity to file debt-collection suits in Ohio and bringing the counterclaim on behalf of a class of similarly situated individuals.  The state court denied the motion because it was filed one month before trial.  Ruth voluntarily dismissed her

counterclaims without prejudice on September 5, 2008, and Unifund voluntarily dismissed its claims with prejudice on September 23.

In October 2008, Ruth sued Unifund again in state court in Ohio. She reasserted her counterclaims from the previous suit and her claim that Unifund violated the FDCPA by misrepresenting its capacity to sue. *See* 15 U.S.C. § 1692e. Her complaint also raised the claims on behalf of a class of similarly situated Ohio consumers.

Unifund removed the case to federal court and successfully moved to dismiss Ruth's complaint on statute-of-limitations grounds. The district court reasoned that Ruth's October 2008 suit came after the FDCPA's one-year limitations period, which accrued at the latest on August 29, 2007, when she was served with Unifund's original debt-collection complaint. *See* 15 U.S.C. § 1692k(d). And it rejected Ruth's claim that Unifund had tolled the statute of limitations by fraudulently concealing its lack of capacity to sue.

## II.

The general rule is that we will not extend the statute of limitations "by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). But there are exceptions to the rule, one of which applies to defendants who fraudulently conceal their wrongdoing and prevent a plaintiff from filing suit during the limitations period. In those circumstances, the "right to be free of stale claims," *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965), yields to the inequity of the defendant's conduct, *see Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).

Applied here, the fraudulent-concealment doctrine triggers three questions: (1) Did Unifund actively conceal its wrongful conduct from Ruth? (2) Did that concealment prevent Ruth from discovering Unifund's wrongdoing during the limitations period? and (3) Did Ruth "exercise[] diligence in trying" to uncover Unifund's conduct? *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). In the absence of success on this theory, Ruth is out of luck. The parties agree that, without a cognizable claim of fraudulent concealment, the lawsuit must be dismissed, because Ruth filed it more than one year after her cause of action accrued. *See* 15 U.S.C. § 1692k(d).

Even if we assume for the sake of argument that Unifund's tardy discovery responses amounted to active concealment of its capacity to sue, Ruth's claim still comes up short. She cannot show that the alleged concealment prevented her from discovering any wrongdoing during the limitations period or that she exercised diligence in trying to uncover Unifund's conduct.

Ruth's own actions show that Unifund's alleged misconduct did not prevent her from raising this FDCPA theory within the limitations period. In a November 2007 state-court pleading, just two months after Unifund served her with the debt-collection action and *before* she served any discovery requests on Unifund, Ruth raised the affirmative defense that Unifund "did not have the legal capacity to sue." R.1-1 Ex. E at 2. That of course is the same theory that underlies her FDCPA action, the only difference being that it is used as a shield in her November 2007 pleading and as a sword in her October 2008 complaint. One does not normally say that fraudulent concealment prevented a litigant from discovering a legal theory she had already uncovered. Confirming the point, we have found no case that supports such an application of the doctrine, nor apparently has Ruth, as she does not cite any such precedent in her legal briefs.

Rule 11 principles support this conclusion. The requirement that parties have a good-faith basis for their pleadings applies to answers every bit as much as it does to counterclaims. *See* Ohio R. Civ. P. 11; *Stevens v. Cox*, No. WD-08-020, 2009 WL 223897, at *12 (Ohio Ct. App. Jan. 30, 2009); *cf.* Fed. R. Civ. P. 11(b). If Ruth had a justifiable basis for raising lack of capacity as an affirmative defense in her November 2007 state-court pleading, she must have had a justifiable basis for raising it as an FDCPA counterclaim as well—at least seven months before the limitations period expired.

The public availability of the ostensibly concealed information supports this conclusion as well. When individuals have "the means of discovery in [their] power," they generally are "held to have known it." *Wood v. Carpenter*, 101 U.S. 135, 141 (1879). Had Ruth put minimal effort into searching public sources during the limitations period, she would have discovered all she needed to know. Ohio law required Unifund to register the names and addresses of its partners with the Hamilton County Recorder, and Unifund's failure to do so for over four years lies at the heart of Ruth's FDCPA

misrepresentation claim. *See* O.R.C. § 1777.02. Hamilton County makes partnership registrations available for public inspection. *See id.*; http://recordersoffice.hamilton-co.org/hcro-pdi/PartnershipSearchView.jsp (last visited May 4, 2010). And a quick search in Hamilton County would have revealed that Unifund had not made the required filings. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 502 (6th Cir. 2003).

Several clues confirmed that Hamilton County was the place to look for Unifund's registration, as opposed to one of Ohio's 87 other counties. Unifund's 2007 complaint against Ruth listed its address as a post-office box in Cincinnati. Unifund also filed a name registration with the Ohio Secretary of State in 2003—another publicly available document—which listed a physical address in Cincinnati. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). It also lists ZB Limited Partners as a general partner with an address of "767 3rd Ave., 16th Floor, New York, NY." 2003 Name Registration at 3. That ties the name registration, along with its Hamilton County address, to Unifund's 2007 complaint, which claims Unifund "is a New York partnership . . . authorized to do business in Ohio," R.1-1 Ex. C.

No doubt, the mere availability of open and readily accessible public records may not suffice by itself to defeat a fraudulent-concealment claim. But, as Ruth's own actions confirm, she had ample reason to look at these records. In November 2007, Ruth raised Unifund's lack of capacity as an affirmative defense to its debt-collection suit. One way to bolster that defense, if not the only way to bolster it in this case, was to investigate whether Unifund had complied with § 1777.02. Indeed, Unifund's 2003 name registration, as Ruth acknowledges, is precisely what prompted her to assert a lack-of-capacity defense in November 2007. Once she looked at the name registration and began to doubt Unifund's capacity to sue, she had no legitimate reason for ignoring whether Unifund had registered with the Hamilton County Recorder.

So long as a plaintiff has a reason to investigate publicly available information, it is difficult to understand how a defendant could conceal it in a county recorder's office any more than the defendant could conceal it in a telephone book. That makes particular sense here because Ohio imposed the registration requirement precisely so that parties could locate

partnership information without relying on the partnership's disclosure itself. *See* O.R.C. § 1777.02; *Kaye v. Pawnee Const. Co., Inc.*, 680 F.2d 1360, 1371 (11th Cir. 1982) (reaching a similar conclusion for a real-estate recording act).

Case law points in the same direction. In *Wood v. Carpenter*, the plaintiffs filed an untimely fraud claim, alleging that the defendant misrepresented his ability to pay legal judgments by accruing several large, sham judgments and hiding his real estate assets through sham sales. *See* 101 U.S. at 136–37. The sham judgments diluted the value of the plaintiffs' claims, permitting them to collect only pennies on the dollar. *See id.* The plaintiffs invoked a statutory tolling provision, which suspended the running of the limitations clock if the defendant concealed his wrongdoing, to excuse their untimely filing. *See id.* at 138. The Supreme Court disagreed, reasoning that the statute tolls only "secret and concealed" wrongdoing, "not one that is patent or known." *Id.* at 141. The judgments and the asset sales were matters of public record, the Court explained, and as a result the plaintiffs readily could have discovered "that they were shams" during the limitations period. *Id.* at 140.

Our precedent suggests a similar conclusion. *See Egerer*, 556 F.3d at 424 (finding that plaintiffs could have uncovered inflated title-insurance fees by consulting publicly available filings); *New England Health Care*, 336 F.3d at 502 (finding that plaintiffs had constructive knowledge of alleged securities fraud because fraud could have been uncovered "through minimal investigation of public records"); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (finding that widely publicized FTC investigation and congressional hearings into alleged wrongdoing precluded fraudulent concealment). Other courts have said the same thing. *See, e.g.*, *Forbes v. Eagleson*, 228 F.3d 471, 488 (3d Cir. 2000) (finding that "plaintiffs could have actually pled almost every allegation" during the limitations period "based on the facts contained in the various publications available to them"); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) (refusing to toll limitations period for antitrust claim where plaintiffs could have uncovered the defendant's wrongdoing through "simple inquiry and consultation of public records"); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1388 (10th Cir. 1985); *United Klans of Am. v. McGovern*, 621 F.2d 152, 154–55 (5th Cir. 1980) (finding that widely

publicized government press conference about and congressional hearing into alleged wrongdoing precluded fraudulent concealment).

Ruth attempts to head off this conclusion on several grounds. She argues that Unifund's 2007 complaint lulled her into believing she did not need to inquire into whether Unifund registered its partnership information. The complaint says Unifund is "a New York partnership and is authorized to do business in Ohio." R.1-1 Ex. C at 1. That description, Ruth claims, misled her into believing that Unifund—as an out-of-state partnership—did not need to register under § 1777.02. Only after she learned that Unifund was an Ohio partnership through discovery, Ruth adds, did she know she needed to look into its registration status. Her theory rests on a mistaken understanding of § 1777.02. "[E]very partnership transacting business in" Ohio, even out-of-state partnerships, must register. *Id.*; *see Continent JV326128 v. Arthur I. Miller Enters., Inc.*, No. 88AP-1051, 1989 WL 55703, *1–2 (Ohio Ct. App. May 25, 1989).

That Ruth served interrogatories about "Unifund's ownership structure," Ruth Br. at 24, does not change matters. The fact remains that the information was readily accessible, and choosing to submit (or not submit) discovery on the point does not by itself allow a litigant to extend the statute of limitations. Only "exceptional circumstances," *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002), not "garden variety claim[s] of excusable neglect," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), allow us to toll the statute of limitations.

Ruth responds that asking her to consult public records would impose an unreasonable burden. Confirming whether Unifund had made the required filings, she says, would require consulting all 88 county recorder's offices. But, as we have explained, she did not need to consult all 88 counties. She needed to consult one: Hamilton County. True enough, to know with certainty whether Unifund lacked the capacity to sue, Ruth would need to consult each county's partnership-registration index. But Rule 11 requires reasonable inquiry into a complaint's factual allegations, not absolute certainty. *See* Fed. R. Civ. P. 11(b); Ohio R. Civ. P. 11; *Forbes*, 228 F.3d at 488. Given the P.O. box listed on the complaint and Unifund's 2003 name registration with Ohio's Secretary of State, Ruth assuredly could have pleaded her FDCPA claim after confirming that Unifund—as a self-

identified entity with a Cincinnati address—had not registered with the Hamilton County Recorder.

Ruth asks us to excuse her failure to consult the public records because doing so would have been futile. Unifund eventually recorded its partnership information with the Hamilton County Recorder on December 12, 2007, but, according to Ruth, Unifund still lacks the capacity to sue because it failed to disclose David Rosenberg's name and address. *See* O.R.C. §§ 1329.10(B), 1777.02, 1777.04. Ruth would have difficulty discovering this defect solely by examining the certificate, she says, and without more she would have no reason to doubt or investigate its validity. Searching Hamilton County's records after December 12 thus would not have uncovered her FDCPA claim.

This argument suffers from two flaws. The December 12 filing date would have tipped her off that Unifund misrepresented its capacity to sue in July when it filed its debt-collection suit. And Ruth at any rate never looked for Unifund's partnership registration—before or after December 12th—so Unifund's filing could not have misled her. We might toll a statute of limitations if a plaintiff diligently searches publicly available information but fails to discover a hidden defect. *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 192, 201 (3d Cir. 2009). But we cannot excuse Ruth's lack of diligence because she might not have discovered her claim during the limitations period even had she acted diligently. Ruth must show that she could not uncover critical information, her "*reasonable investigation notwithstanding.*" *Gould v. United States Dep't of Health and Human Servs.*, 905 F.2d 738, 745–46 (4th Cir. 1990) (en banc) (emphasis added).

The concurrence suggests that Ruth's 2007 affirmative defense by itself disposes of this case and that we need not address the public availability of the relevant records. But, with respect, it is not that easy. Ruth argues that, while her 2007 defense and her FDCPA claim rest on the same general legal theory, they rest on different factual predicates. She raised the defense, she claims, because she thought that Unifund claimed to be a New York partnership in its complaint, yet she was unable to find a New York partnership named Unifund registered with the Ohio Secretary of State. Her FDCPA claim, in contrast, rests on her discovery, after realizing that Unifund had properly registered with the State as an Ohio partnership, that Unifund did not properly register with the Hamilton County Recorder.

If we accept Ruth's claims about what motivated the 2007 affirmative defense, as we must on a motion to dismiss, that defense standing alone cannot dispatch Ruth's claims of diligence. Knowledge of one general legal theory and one possible claim under that theory does not establish knowledge of all possible claims under the theory, especially when a defendant actively conceals relevant information, as Ruth alleges. Knowledge of an obvious fraud, to use one example, does not prove knowledge of a more latent fraud. The publicly available records, then, respond to this argument and confirm that Ruth did not diligently pursue her FDCPA claim.

\* \* \*

In resolving this appeal, we leave several questions for another day. We need not decide whether the FDCPA incorporates a discovery rule or permits equitable tolling. *Compare Mangum v. Action Collection Servs., Inc.*, 575 F.3d 935, 939–41 (9th Cir. 2009) (finding the FDCPA incorporates both doctrines), *with Johnson v. Riddle*, 305 F.3d 1107, 1114 n.3 (10th Cir. 2002) (expressing doubt about whether the FDCPA incorporates a discovery rule). And we need not answer whether the FDCPA's one-year clock started when Unifund filed its suit or when it served Ruth. *Compare Johnson*, 305 F.3d at 1113 (claims accrue upon service of process), *with Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (claims accrue upon "filing of the complaint"). No matter the answer to either question, Ruth's lawsuit remains time-barred.

III.

For these reasons, we affirm.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I concur in the judgment and join in the reasoning of the opinion only insofar as we hold that Ruth's own actions—as provided in the well-pleaded facts in her complaint, the Unifund complaint, Ruth's answer to the Unifund complaint, and the publicly available documents—demonstrate that she was on inquiry notice of Unifund's potential lack of capacity to sue as of the time that she filed her answer and affirmative defense in November 2007. This is sufficient to contradict conclusively Ruth's argument that Unifund's alleged concealment prevented her from discovering Unifund's misconduct, the required second element of fraudulent concealment. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009); *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988). This removes her ability to rely on the fraudulent-concealment doctrine for equitable tolling of the statute of limitations at issue because she cannot satisfy her burden regarding all three elements of fraudulent concealment. We need not continue on to the third fraudulent-concealment element and speculate on the extent of Ruth's investigation and the diligence that she did or did not exhibit by consulting public records in the state. I believe that this aspect of the opinion is dicta.

Based on the allegations in Ruth's complaint, Ruth's failure to consult public records for a partnership name registration in either the Ohio Secretary of State's files or the Hamilton County Recorder's Office at the time she filed her affirmative defense in November 2007 does not alter the fact that the documents that would have supported her FDCPA claim were available at that time such that Unifund's alleged concealment could not have prevented her from discovering the misconduct. Ruth's complaint alleges that Unifund violated the FDCPA because "they commenced and maintained debt collection lawsuits against Plaintiff . . . , even though they did not have the legal capacity to do so." Doc. 1-1 (Compl. ¶ 82(a)); *see also id.* at ¶¶ 47, 51–52. Nowhere in the complaint does Ruth distinguish between the factual predicates that supported her November 2007 affirmative defense and those that allegedly support her FDCPA claim. Because we are constrained to review only the allegations as presented in the complaint and any other appropriate

documents when we review a motion to dismiss, *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001), I believe that we may dispose of Ruth's fraudulent-concealment arguments on the basis of her failure sufficiently to plead facts in support of the second fraudulent-concealment element, even when the complaint is viewed in the light most favorable to Ruth.

I therefore respectfully join only that part of the majority opinion that is necessary to decide the issue on appeal, i.e. insofar as the opinion affirms the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the grounds that Ruth's FDCPA claims are barred by the statute of limitations and she has not sufficiently pleaded facts to support her equitable tolling argument.  I join the judgment affirming the district court's judgment dismissing Ruth's FDCPA claims under Rule 12(b)(6) on statute of limitations grounds.