NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0470n.06

No. 15-3563

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 15, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DEREK A. SMITH, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| LERNER, SAMPSON & ROTHFUSS, | ) |
| L.P.A.; BAC HOME LOAN SERVICING, | ) |
| L.P., fka Countrywide Home Loans, Inc., | ) |
| SHELLIE HILL; MORTGAGE | ) |
| ELECTRONIC REGISTRATION | ) |
| SYSTEMS, INC.; TRINA HARRINGTON; | ) |
| MARY KIST, | ) |
| | ) |
| Defendants-Appellees. | ) |

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:     BOGGS and ROGERS, Circuit Judges, and BERG, District Judge.[*]

BERG, District Judge. This case arises from a mortgage foreclosure. Appellant Derek A. Smith ("Smith") appeals the dismissal of his claims under the federal Fair Debt Collection Practices Act ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and several Ohio state statutes. Smith contends that the district court erred in holding that his FDCPA claim was untimely and his RICO claim barred by res judicata. These rulings formed the basis for the district court's decision to decline to exercise supplemental jurisdiction over

---

[*] The Honorable Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

Smith's state-law claims. For the reasons set forth below, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

### 1. The mortgage

On July 21, 2007, Smith financed the purchase of his home located at 147 Lakeview Lane, Chagrin Falls, Ohio in Geauga County ("the property") with a promissory note for $162,000 to Capital One Home Loans, LLC. On the same day, Capital One secured its note via a mortgage lien on the property. Capital One recorded the mortgage with the Geauga County Recorder's Office on August 13, 2007. Smith claims that shortly thereafter, Capital One sold the loan to Freddie Mac and delivered its note endorsed in blank to Freddie Mac or to a bank that had a custodial agreement with Freddie Mac. Smith then began making his mortgage payments to Appellee Bank of America.[1]

In 2009, Bank of America paid a $17,000 assessment fee that Geauga County had imposed on the property for sewer upgrades. When Bank of America paid the assessment, Smith claims that he was in the process of negotiating with the county to pay the assessment himself. He claims that Bank of America's payment was therefore erroneous, wrongful, and unauthorized.

Soon after, Bank of America allegedly increased Smith's mortgage payment in order to recover its payment for the assessment. Unable to pay this increased amount, Smith missed a payment. Plaintiff claims that, in January 2010, Bank of America stopped accepting his mortgage payments.

---

[1] Bank of America, N.A., is the successor of named Appellee BAC Home Loans Servicing, L.P., and is referred to as "Bank of America" in this opinion.

## 2. The state-court action

On January 19, 2010, Bank of America, through its counsel, Appellee Lerner, Sampson & Rothfuss, L.P.A. ("LSR"), sued to foreclose on the property in the Geauga County Court of Common Pleas (hereafter the "state court").[2]  On the same day, Appellee Mortgage Electronic Registration Systems, Inc., ("MERS") allegedly conveyed an interest in the note and mortgage to Bank of America (the "assignment").  In its pleadings, Bank of America, by way of LSR, relied on the assignment to represent to the state court that Bank of America held an interest in the mortgage.  Smith claims that Appellees Shellie Hill, an LSR employee, and Mary Kist, a Bank of America employee, knowingly and falsely created the assignment and allonge[3] filed in state court that represented that Bank of America held an interest in Smith's note and mortgage.  Because Capital One had previously sold the note and mortgage to Freddie Mac, Smith claims that no party to the assignment actually held an interest in the note or mortgage.

In March 2010, Bank of America filed a motion for default judgment in the foreclosure action.  Smith claims that during this time he was negotiating with Bank of America about a possible mortgage modification.  He states that during these discussions, Bank of America admitted that it made a mistake when it paid the property's sewer assessment and vowed to correct this mistake through a mortgage modification.  Smith also states that Bank of America told him that it would not seek to foreclose on his property, and advised him not to obtain an attorney to defend the foreclosure action.

---

[2] Case No. 10F000047.

[3] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Black's Law Dictionary 92 (10th ed. 2014).

In July 2010, Smith spoke with Appellee Trina Harrington, a negotiator for Bank of America, and claims that she reaffirmed that Bank of America would not proceed with the foreclosure on his property. Smith contends that in August 2010, Bank of America made numerous payment demands in exchange for reinstating his mortgage. During one conversation, a Bank of America employee allegedly proposed a plan to manipulate Smith's mortgage payment in order for Smith to qualify for the federal government's Home Affordable Modification Program ("HAMP"). Plaintiff states that he eventually accepted a modification offer and that Bank of America later reneged on the offer because the proposed modification allegedly violated Freddie Mac's policies. In any event, Smith never responded to Bank of America's motion for default judgment in the state court.

On August 16, 2010, the state court issued a judgment and decree in foreclosure, finding that Bank of America held a valid mortgage interest in the property. Smith did not appeal this judgment. On September 10, 2010, an order of sale issued to the Geauga County Sheriff. After retaining counsel, Smith filed a motion for relief from judgment under Ohio Civ. R. 60(B) and obtained a stay of execution of the state court's judgment in foreclosure.

On August 22, 2012, Smith filed a supplemental memorandum in support of his motion for relief from judgment. In it, he raised a number of potential defenses to Bank of America's foreclosure suit, including that there was "insufficient evidence" that Bank of America was a "real party in interest" and that discovery was therefore necessary. On May 14, 2013, the state court found that Smith had not presented any evidence that he was entitled to relief under Rule 60(B), overruled his motion for relief from judgment, and vacated the stay of execution it had previously granted. Smith, again, did not appeal this ruling.

On October 16, 2013, the day before the property was scheduled for a sheriff's sale, Smith filed for bankruptcy and obtained a stay. On January 6, 2014, Bank of America, via LSR, filed an objection to the confirmation of Smith's Chapter 13 plan in the bankruptcy court on the ground that it held a mortgage lien on Smith's property. Smith states that Bank of America's filing was false because it overstated the amount due and misrepresented that Bank of America owned his mortgage when it was merely a servicer for Freddie Mac.

### 3. The district-court action

On October 15, 2014, Smith filed suit against LSR, Hill, Bank of America, MERS, Harrington, and Kist in the Northern District of Ohio. Smith's complaint raised two federal counts: Count I, violation of the FDCPA, 15 U.S.C. § 1692 et seq.; and Count II, violation of the RICO Act, 18 U.S.C. § 1961 et seq. Smith also alleged seven state-law claims: Count III, violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 et seq.; Count IV, falsification; Count V, civil conspiracy; Count VI, breach of contract; Count VII, quiet title; Count VIII, fraud and misrepresentation; and Count IX, wrongful foreclosure. On December 12, 2014, LSR and Hill filed a motion to dismiss. On January 9, 2015, Bank of America, MERS, Harrington, and Kist filed a separate motion to dismiss.

On April 20, 2015, the district court granted Defendants' motions to dismiss the federal claims with prejudice and dismissed the state-law claims without prejudice. The district court first ruled that Smith's FDCPA claim was barred under the law's one-year statute of limitations. The district court noted that Smith filed the instant suit four years after Bank of America instituted its foreclosure action in state court and two years after Smith questioned the legitimacy of Bank of America's interest in the mortgage in his August 22, 2012 supplemental memorandum in state court. Additionally, the district court found that Smith would not benefit

the tolling of the statute of limitations, as he did not bring his FDCPA claim within one year of the state court's denial of his motion for relief from judgment, or otherwise appeal the state court's decision.

The district court also dismissed Smith's RICO claim with prejudice under the doctrine of res judicata. The district court found that Smith's claim of fraud under RICO was based on the premise that MERS had no legitimate interest in the mortgage and that, consequently, the mortgage assignment from MERS to Bank of America was fraudulent. The district court ruled that Smith's fraud claim was a compulsory counterclaim in the state court because it was logically related to the property's mortgage and foreclosure. Because Smith failed to allege fraud as a compulsory counterclaim in the state action, the district court held that his RICO claim was barred by res judicata.

Having dismissed both federal claims, the district court declined to exercise supplemental jurisdiction over Smith's seven state-law claims and dismissed them without prejudice. On May 20, 2015, Smith filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

The district court dismissed Smith's FDCPA and RICO claims under Federal Rule of Civil Procedure 12(b)(6), a dismissal we review de novo. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). At the 12(b)(6) stage, "[a]ll well-pled allegations of the complaint are taken as true." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514-15 (6th Cir. 1999). This analysis consists of "essentially the same analysis as the district court in that 'we take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then . . . dismissal is proper.'" *Id.* at 515 (quoting *Weiner*, 108 F.3d at 88).

6

The district court's decision to dismiss Smith's state-law claims without prejudice is subject to a different standard of review. Deciding whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 "falls within [the] sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion." *Weeks v. Portage Cty. Exec. Offices*, 235 F.3d 275, 279 (6th Cir. 2000).

## III. ANALYSIS

### A. FDCPA Claim

Civil actions under the Fair Debt Collection Practices Act may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Generally, "when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 258 (6th Cir. 2014). Under the rule of *Slorp*, the statute of limitations began running on January 19, 2010: the date when Bank of America filed the state-court action seeking to foreclose on the mortgage. The FDCPA claim accrued when Bank of America initiated the foreclosure action on a mortgage that Smith claims it did not actually own. Smith's claim is therefore well outside the one-year limitations period; it was not filed until October 15, 2014, over four and a half years after the "otherwise unfair lawsuit" was brought.

Smith counters that the filing date of the state-court action did not start the clock on his FDCPA claim. He argues that many of the actions that make up his claim, including the allegedly fraudulent assignment and Bank of America's subsequent objection at his bankruptcy proceeding, occurred *after* the filing of the state-court action. This argument is not well taken. The assignment was created on the same day that the state-court action was filed, on January 19, 2010. And Bank of America did not violate the FDCPA anew merely by asserting its interest in

the mortgage throughout the state-court action. In *Slorp*, a factually similar case involving the same law firm, this court held that the "defendants did not commit a fresh violation of the FDCPA each time they filed pleadings or memoranda reaffirming the legitimacy of their state-court suit rather, those were the continuing effects of their initial violation." *Id.* at 259. Because the assignment formed the basis of the *Slorp* plaintiff's FDCPA claim, the *Slorp* court held that the defendants did not commit independent violations of the FDCPA simply by prosecuting their lawsuit.

Smith also argues that his claim is timely based on Bank of America's January 6, 2014 objection in bankruptcy court to the confirmation of Smith's bankruptcy plan. If this objection constitutes a separate violation of the FDCPA, it occurred less than a year from his filing of the FDCPA claim on October 15, 2014. There is persuasive authority for the proposition that filing a proof of claim in bankruptcy court cannot form the basis of an FDCPA action. *See Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) ("The FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors. There is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself."). We need not rely on this authority, however, because Bank of America's proof of claim in the bankruptcy action did not constitute a new FDCPA violation. The filing was, as in *Slorp*, simply an action that gave "continuing effect" to Bank of America's initial assertion that it had an interest in the mortgage, an interest first recognized in the state court. Bank of America's filing in the bankruptcy court, therefore, did not reset the statute of limitations.[4]

---

[4] Smith also relies on *Whittingham v. Mortgage Electronic Registration Services, Inc.*, Civ. No. 06-3016 (RBK), 2007 WL 1456196, at *3 (D.N.J. May 15, 2007) to argue that the "actual collection of an excessive judgment is a separate claim from one based upon a demand for an excessive judgment." This argument is not well taken.

Smith further argues that the circumstances of this case justify tolling the statute of limitations because Defendants fraudulently concealed the true nature of Bank of America's interest in the mortgage. An individual who learns that a mortgage assignment is fraudulent after the expiration of the statute of limitations can seek to toll the statutory period under the fraudulent-concealment doctrine. *See Slorp*, 587 F. App'x at 259.

Doing so, however, is no easy task. "The general rule is that we will not extend the statute of limitations 'by even a single day.'" *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)). We have explicitly declined to rule on the question of whether equitable tolling based on fraudulent concealment applies under the FDCPA. *See Fillinger v. Lerner, Sampson & Rothfuss*, 624 F. App'x. 338, 340-41 (6th Cir. 2015). But even if equitable tolling were to apply to FDCPA claims, Smith fails to allege facts sufficient to show fraudulent concealment. "The doctrine of fraudulent concealment allows equitable tolling of the statute of limitations where 1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Id.* at 341 (quoting *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x. 456, 461 (6th Cir. 2010)).

Smith fails to allege facts supporting a fraudulent-concealment claim. Addressing the factors out of order, we find that Smith cannot show the second factor—that Defendants' alleged fraudulent concealment prevented him from discovering his FDCPA claim. We have previously held that a plaintiff who relied on a legal theory in defense of a state-court suit could not claim

---

*Whittingham* is factually distinguishable because in this case the bankruptcy trustee, not Bank of America, is currently receiving Smith's payments on his debt. Bank of America is therefore not the party making an "actual collection of an excessive judgment" that the *Whittingham* court found to be a separate claim. (R.1, ID 34).

ignorance of that theory due to the defendants' fraudulent concealment. *Ruth*, 604 F.3d at 910-11. The plaintiff in *Ruth* raised the affirmative defense in her state-court pleadings that the debt collector lacked the capacity to sue her. After arguing lack of capacity defensively, the plaintiff sought to toll the statute of limitations so that she could assert this allegation offensively in an FDCPA claim. *Id.* We declined to toll the statute of limitations, stating, "[o]ne does not normally say that fraudulent concealment prevented a litigant from discovering a legal theory she had already uncovered." *Id.* at 911. Here, Smith raised the issue of whether Bank of America was a real party in interest in his supplemental memorandum filed in the state court on August 22, 2012. Having used this theory defensively two years prior to bringing this suit, Smith cannot successfully claim that Defendants' fraudulent concealment prevented him from discovering the theory and thus assert it offensively as an FDCPA claim within the statute-of-limitations period.

Additionally, Smith cannot show that Defendants did anything to conceal their conduct. The allegedly fraudulent assignment was publicly available to all because it was both filed in state court and registered with the county. "[I]t is difficult to understand how a defendant could conceal [publicly available information] in a county recorder's office any more than the defendant could conceal it in a telephone book." *Id.* at 912.

The statute of limitations, therefore, cannot be tolled under a fraudulent concealment theory. Accordingly, the district court's conclusion that Plaintiff's FDCPA claim is barred by the applicable statute of limitations is affirmed.

## B. RICO Claim

Turning to the RICO claim, Smith argues that the district court erroneously held that res judicata barred his RICO claim. Federal courts look to the rendering state's law to determine the preclusive effect that attaches to the rendering state's judgments. *See Ohio ex rel. Boggs v. City*

*of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). "Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Doe ex rel. Doe v. Jackson Local Sch. Sch. Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007)). Claim preclusion prevents parties from bringing subsequent actions where the claims could have been litigated in a prior suit. *Boggs*, 655 F.3d at 519. Issue preclusion, in contrast, "prevents the relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies[,] even if the causes of action differ." *Id.* at 520 (quoting *Doe*, 422 F. App'x at 500).

### 1. Claim Preclusion

Claim preclusion consists of four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Id.* (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)). Here, Defendants argue that Smith's RICO claim is barred by claim preclusion because the fraudulent conduct underlying the RICO claim could have been raised as a counterclaim in the previous state-court foreclosure action, and under Ohio law was in fact a compulsory counterclaim that Smith was required to raise at that time.

As a threshold matter, Smith claims that under Ohio law, the affirmative defense of res judicata cannot be raised on a 12(b)(6) motion. Although this might be correct in Ohio state courts, federal courts apply federal procedural rules, which allow parties to raise the defense of

res judicata at the 12(b)(6) stage. *See DeNune v. Consol. Capital of N. Am., Inc.*, 288 F. Supp. 2d 844, 852 (N.D. Ohio 2003); *Stephens v. Hamilton Cty. Jobs & Family Servs.*, 46 F. Supp. 3d 754, 759 (S.D. Ohio 2014); *Rushford v. Firstar Bank, N.A.*, 50 F. App'x 202, 207 (6th Cir. 2002) (affirming district court's dismissal of the plaintiff's claims based on res judicata pursuant to Rule 12(b)(6)).

Turning to the first element of res judicata, whether there was a final decision on the merits by a court of competent jurisdiction, the state court issued two final decisions on the merits: (1) its default judgment in decree of foreclosure on August 16, 2010, and (2) its judgment denying Smith's motion for relief from judgment on May 14, 2013—both of which Smith failed to appeal. "Ohio law recognizes that a default judgment is a valid and final judgment on the merits." *Duncan v. U.S. Bank, NA*, 574 F. App'x 599, 602 (6th Cir. 2014). Smith relies on *In re Cunningham*, No. 12-34162, 2014 WL 1379136, at *1 (Bankr. N.D. Ohio Apr. 8, 2014), to argue that under Ohio law, default judgments are not final judgments. But *Cunningham* reaches the opposite conclusion. *Id.* at *5 ("The January 26, 2007, judgment is a final judgment on the merits for purposes of issue preclusion even though it was entered by default."). *Cunningham* holds only that default judgments do not normally meet the issue-preclusion doctrine's "actually litigated" prong. *Id.* at *6. The legal issue considered here is claim preclusion (res judicata), not issue preclusion, and claim preclusion does not require that a claim be actually litigated. As a result, the state court's default judgment in decree of foreclosure was a final judgment.

As for the motion for relief from judgment, "Ohio law is clear that a judgment entry denying a Civ. R. 60(B) motion for relief from judgment is final and appealable, and, where a party fails to file a timely appeal under App. R. 4(A), res judicata applies to bar further litigation

of the issues." *Neff v. Flagstar Bank, FSB*, No. 2:11-cv-1136, 2014 WL 3855086, at *9 (S.D. Ohio Aug. 5, 2014), *aff'd on alternate grounds*, 616 F. App'x 791 (6th Cir. 2015) (internal citation omitted); *see also Keymarket of Ohio, LLC v. Keller*, 483 F. App'x 967, 971 (6th Cir. 2012) (holding that "the final decision for res judicata purposes was the court's denial of [the] motion for relief from judgment, not the underlying default judgment"). The district court, therefore, rightly concluded that the state court's denial of Smith's motion for relief from judgment was a final decision on the merits.

The second element of res judicata requires that the subsequent lawsuit involve the same parties or privies as the first action. "A party is in 'privity' with another if it succeeds to an estate or an interest formerly held by the other, or where a party is so identified in interest with another that the party represents the same legal right." *Jarvis v. Wells Fargo Bank*, No. 09 CO 6, 2010 WL 2749602, at *7 (Ohio Ct. App. June 30, 2010). "'[A] mutuality of interest, including an identity of desired result,' may also create privity between parties." *Id.* (quoting Brown v. Dayton, 730 N.E.2d 958, 962 (Ohio 2000). Here, LSR, Hill, Bank of America, MERS, Kist, and Harrington all shared the same interest in effectuating Bank of America's foreclosure of the mortgage and therefore were all in privity.

The third res judicata element requires that the subsequent action raise claims that were or could have been litigated in the first action. Ohio Civil Rule 13(A) governs compulsory counterclaims and is meant to "settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims which arise from a single transaction or occurrence." *Smith v. Bank of Am.*, 11-MA-169, 2013 WL 5446933, at *7 (quoting *State ex rel. Massaro Corp. v. Franklin Cty. Court of Common Pleas*, 584 N.E. 2d 756, 758 (Ohio Ct. App. 1989)). "Failure to assert a compulsory counterclaim will result in its being barred in any subsequent action." *Id.*

13

(quoting *Jarvis*, 2010 WL 2749602, at *6). To apply Civ. R. 13(A) and bar a claim as a compulsory counterclaim, "the claim must exist at the time the pleading is served and must arise out of the transaction or occurrence that is the subject matter of the opposing claim." *Countrywide Home Loans Servicing, L.P. v. Stultz*, 832 N.E.2d 125, 131 (Ohio Ct. App. 2005)(citing *Rettig Enters. V. Koehler*, 626 N.E.2d 99 (Ohio 1994)); *see also Geauga Truck & Implement Co. v. Juskiewicz*, 457 N.E.2d 827, 829 (Ohio 1984).

The second element, "arising out the same transaction or occurrence," is present here. A claim arises out of the same transaction or occurrence if it is "logically related to the opposing party's claim and would require considerable duplication of effort by both the parties and the trial court if separate trials were permitted." *Jarvis*, 2010 WL 2749602, at *7 (internal quotation marks omitted). In a foreclosure action, claims that are logically related to the mortgage and foreclosure are compulsory counterclaims. *Id.*

Unadorned, Smith's RICO claim is captured in paragraph 146 of his complaint:

146. LSR, BAC, MERS, Mary Kist and Shellie Hill executed the following acts, which were devised and implemented as a scheme to defraud Plaintiff:

a. Drafting and executing the fraudulent assignment
b. Recording the fraudulent assignment
c. Drafting and Filing fraudulent allonge to mislead the court and Mr. Smith that it BAC [sic] was the holder and owner of the note and owner of the mortgage and entitled to foreclose on Mr. Smith's Home

Smith's RICO claim is logically related to the foreclosure and mortgage because it is based on the issue of whether Bank of America held a valid interest in the mortgage—or whether, as Smith claimed, Bank of America had no such interest because the mortgage had never been assigned to it, and the assignment was fraudulent. The RICO claim arises out of the same transaction or occurrence: the allegedly false assignment of the mortgage interest.

14

Establishing the first element of a compulsory counterclaim—whether Smith's RICO claim *existed* at the time Smith served his responsive pleading—is a closer call. Here, Smith did not file any responsive pleading to Bank of America's foreclosure suit. However, the first element may be satisfied even where a party defaults by failing to submit an answer if the claim existed at the time when the party could have filed a responsive pleading. *See Sunkin v. Collision Pro, Inc.*, 880 N.E.2d 947, 952 (Ohio Ct. App. 2007); *Wagner's Country Corner v. Fischer*, No. 47879, 1984 WL 5242, at *2 (Ohio Ct. App. Oct. 11, 1984); *Broadway Mgmt., Inc. v. Godale*, 378 N.E.2d 1072, 1073 (Ohio Ct. App. 1977).

At its heart, Smith's RICO claim derives from his contention that Defendants engaged in a scheme to defraud him by creating a fraudulent assignment in order to misrepresent that Bank of America possessed a valid mortgage interest in the property. Defendants allegedly created and filed the assignment with the state court at the time Bank of America filed its foreclosure suit. Thus, at the time that Smith should have filed an answer in the state court, he could have challenged the assignment and the alleged wrongdoing that led to its creation. The substantive core of Smith's RICO claim existed at the time when he could have filed a responsive pleading.

Smith counters that his RICO claim involves some allegations of fact that occurred well after the time that he could have answered Bank of America's complaint, including that Defendants relied on the fraudulent assignment to misrepresent the nature of Bank of America's interest in the property to various Ohio courts, the Geauga County Sheriff, and the bankruptcy court. Although this additional conduct occurred after the time when Smith's answer to the foreclosure complaint was due, the fraud itself—the allegedly fraudulent assignment—occurred prior to the filing of the foreclosure suit. Defendants' subsequent acts were attempts to enforce the state court's judgment, and the allegedly fraudulent scheme was complete at the time Bank of

15

America filed its complaint in the state court. Any claims concerning fraud in connection with this assignment therefore existed at the time that Smith could have answered the complaint, as the assignment was in existence at this time.

Furthermore, as the district court noted, Smith did in fact raise this issue in his supplemental memorandum in the state court when he stated that discovery was necessary to establish "whether or not [Bank of America was] actually a real party in interest." These arguments were before the state court when it overruled his motion for relief from judgment.

Nevertheless, the RICO claim does encompass alleged conduct as part of the "pattern of racketeering activity" that unquestionably had not yet happened at the time when either an answer to the motion for default would have been filed, or when the motion for relief from judgment was being litigated. The third element is therefore not clearly satisfied.

The fourth element of the res judicata analysis is whether the second action arose out of the same transaction or occurrence. As explained above, Smith's claim arose from Bank of America's foreclosure action. The foreclosure action prompted the creation of the assignment and allonge, which forms the basis of Smith's RICO claim. This element is met.

Three of the four elements for claim preclusion have been firmly established, but the third element—that the second action raises claims that were or could have been litigated in the first action—is a close question. But because it is clear that Smith's RICO claim is barred under the doctrine of issue preclusion, we need not resolve whether the district court erred in holding that it was barred by claim preclusion as well.

## 2. Issue Preclusion

Even if Smith were correct that his RICO claim did not exist until after the state-court action, and that claim preclusion therefore does not apply, the doctrine of issue preclusion (also known as collateral estoppel) nonetheless bars this claim.

Under 18 U.S.C. § 1964(c), to maintain a civil RICO suit, a plaintiff must allege an injury to his business or property "by reason of the RICO violation." *Slorp*, 587 F. App'x at 262. A fraudulent scheme intended to deprive a person of title in his home is a "quintessential property injur[y]" under 18 U.S.C. § 1964(c). *Id.* at 263.

In *Slorp*, this court held that the plaintiff had sufficiently pleaded an injury to his property under § 1964(c) where the plaintiff alleged that the defendants created a fraudulent mortgage assignment and initiated a foreclosure action in order to wrongfully deprive him of title to his home. *Id.* at 262-64. Although the plaintiff was allowed to amend his complaint to add his RICO claim, this court warned that the plaintiff's injury would "vanish if the defendants prove that Bank of America was the legitimate mortgagee." *Id*. at 264

Here, the state court has already determined that Bank of America was the legitimate mortgagee. Under the doctrine of issue preclusion, the state court's determination of this issue cannot now be disturbed.

Under Ohio law, for issue preclusion to apply the following four elements must be met:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary in the final judgment; (3) The issue in the present suit must have been identical to the issue in the prior suit; (4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*In re Wilcox*, 229 B.R. 411, 415-16 (Bankr. N.D. Ohio 1998).

Beginning with the first element, the state court entered a final judgment on August 16, 2010 when it entered a default judgment of foreclosure. *See In re Henkel*, 490 B.R. 759, 774 (Bankr. S.D. Ohio 2013). Further, although Smith did not answer the complaint, he was served on January 28, 2010 and had a full and fair opportunity to litigate the issue. *See In re Foster*, 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002) ("Under Ohio law . . . if a party is afforded an opportunity to litigate disputed issues of fact and elects not to participate fully in the proceeding, that tactical decision will not prevent the application of preclusion principles in a subsequent action."). The first element is thus satisfied.

Turning to the second element, to show that an issue was "actually litigated" in the prior proceeding on the basis of a default judgment, two factors must be met: (1) "the [party] must actually submit to the state court admissible evidence apart from [the] pleadings"; and (2) "the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding." *In re Robinson*, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999) (italics omitted). In his complaint, Smith concedes that Defendants submitted supporting evidence to the state court, including the allegedly fraudulent assignment and allonge. In fact, he complains that the state court reached its judgment "in reliance of [sic] the [a]ssignment and allonge[.]"

The second factor requires a default judgment to "contain express findings in order to be given preclusive effect in subsequent litigation between the parties." *In re Sweeney*, 276 B.R. 186, 193 (6th Cir. B.A.P. 2002). Express findings "need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment." *Id.* at 194. An express finding must be more than a "pro forma recitation." *Id.*

18

Here, the state court expressly found that Bank of America's complaint was "true" and that Smith owed the balance due on the note. The court further found that Bank of America's note was secured by the mortgage and that Bank of America was the proper mortgagee. Because the state court made these findings, the second element for issue preclusion is satisfied.

The third element requires that "the identical issue was actually decided in the former case." *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983). The state court resolved the identical issue presented before this court—Bank of America's interest in the property. Accordingly, the third element has also been established.

Finally, the fourth element is met because, "the party against whom estoppel is sought," in this case Smith, "was a party . . . to the prior action."

Accordingly, the state court's finding that Bank of America was the proper mortgagee is due issue-preclusive effect and may not be re-litigated. Smith's RICO claim rests on the allegation that he suffered an injury to his property. This claim is barred, however, by the state court's finding that Bank of America was the rightful mortgagee and thus had the right to sue for foreclosure.

## C. Dismissal of State-Law Claims

A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having properly dismissed Smith's FDCPA and RICO claims, the district court did not abuse its discretion in dismissing Smith's state-law claims.

The district court's judgment is AFFIRMED.

19